**Rickey WHITE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–83–464.**

Court of Criminal Appeals of Oklahoma.

July 9, 1985.

Thomas G. Smith, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Rickey White was convicted of Murder in the First Degree in Choctaw County District Court. Sentence was imposed, as recommended by the jury, of life imprisonment.

The charges arose from the killing of Albert Hopkins, a white bootlegger who lived one mile north of Boswell, Oklahoma. On the evening of his death, November 1, 1981, he went to the back door of his house as he often did to sell liquor. His wife was in the living room where the television was on at a high volume when she heard loud voices, one sounding as that of a young black man. When her husband did not return, she went to the back porch to find him in a pool of blood. He was pronounced dead on arrival at the hospital, his body riddled with fifteen wounds. Nine slugs were removed from his corpse.

Appellant admitted he went to Hopkins' house to buy liquor twice on the day of the killing. His testimony, contrary to that of the three other men who accompanied him, was that on the second trip he was too drunk to get out of the automobile he drove and one of the three other men went up to Hopkins' house to purchase the liquor.

The three other men each testified that it was appellant who went up to Hopkins' house. During the second trip they made to purchase liquor there on November 1, 1981, appellant went to the back of the house but returned shortly and got his shotgun out of the trunk. He again went

to the back of the house which was out of the passengers' view. He came back to the automobile, put the shotgun in the floor of the back seat, and drove away. Two of the men testified that appellant said something about shooting the man when he came back to the car, but none heard shotgun blasts. Each of the three men later gave statements to the police implicating appellant.

■ The appellant assigns as error the trial court's refusal to suppress evidence which was discovered upon execution of a search warrant he alleges was issued on a defective affidavit. The affiant, Oklahoma Bureau of Investigation Agent Larsh, signed the affidavit after being sworn by Associate District Judge James Wolfe. The warrant to search appellant's vehicle was based upon probable cause garnered from the affidavit. Appellant urges that since there was no jurat upon this handwritten affidavit, it is not valid.

This Court stated in *Blair v. State*, 55 Okl.Cr. 280, 29 P.2d 998, 999 (1934) (Syllabi No. 1) that:

> [T]he jurat is simply evidence of the fact that the affidavit was duly sworn to by the affiant, and, in the event of its omission, the fact that the affidavit was properly sworn to may be proven by other evidence.

This Court held there that the defect was cured when the defendant called affiant and proved that he had sworn to the affidavit. Here too, appellant's counsel at preliminary hearing questioned Agent Larsh regarding the steps he took to get the warrant, and cured the defect by eliciting his testimony that he was in fact sworn by Associate District Judge Wolfe. There is no error in this regard.

■ Appellant further complains that the affidavit establishing probable cause for the search warrant was deficient in that it was based upon hearsay, belief or conclusions, and not upon evidential facts. The affidavit relates information given to Agent Larsh by a named informant, appel-

lant's father-in-law, Earl Williams, who was one of the three men who accompanied him to the murder site. It also relates information discovered through the conduct of an investigation by police officers, without stating by whom or how the information was gathered.

"Probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667, 678 (1978). *Lee v. State*, 661 P.2d 1345 (Okl.Cr.1983). The fact that the affiant's information was received from other officers does not impugn the integrity of the affidavit underlying the search warrant. *Id.* at 1353. In the instant case, the affidavit sets forth enough of the underlying facts and circumstances to enable the judge issuing the warrant to independently find probable cause that the vehicle to be searched contained the murder weapon, appellant's shotgun.[1] The affidavit states that Earl Williams identified to another officer the vehicle located at a specific address as the one driven by his son-in-law to Hopkins' home and in which appellant carried his shotgun. The affidavit states that though an "investigation" revealed the vehicle was registered to Maple Oldsmobile, Hugo, Oklahoma, Williams told the police he believed appellant owned it. The affidavit states that appellant moved the automobile from one location to another at a certain time, but it does not state who observed this.

■ If there is sufficient evidence from which a judge may objectively discern probable cause,

> [S]uppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

---

1. Ballistics evidence presented at trial demonstrated that to the exclusion of all other shot-guns, that appellant's was the murder weapon.

*United States v. Leon,* 468 U.S. ——, ——, 104 S.Ct. 3405, 3423, 82 L.Ed.2d 677, 701 (1984); see *Franks,* supra. Appellant has not demonstrated that Agent Larsh was dishonest or reckless with regard to the truth in submitting his sworn statement. Rather, the veracity of his statement has been borne out by evidence presented at preliminary hearing and at trial. This assignment lacks merit.

 One of the men in appellant's company on the night of the homicide, Arthur Brown, had received a deferred sentence on an unrelated felony charge of Lewd Molestation of a Minor sometime prior to testifying at appellant's trial. Appellant charges that he was denied his right to confront this witness because the trial court would not allow cross-examination regarding the charge for purposes of impeaching his credibility. He reasons that since the deferred sentence was the result of a guilty plea to a felony charge, it should be useful for impeachment purposes. The controlling statute is 12 O.S. 1981, § 2609, which allows for impeachment "evidence that he has been convicted of a crime. . . ." A deferred sentence is not a conviction though it may be derived by way of a plea of guilty, and is not a proper subject for impeachment. *Belle v. State,* 516 P.2d 551 (Okl.Cr.1973). The trial court does have discretion under 12 O.S.1981, § 2608, subd. B, to allow inquiry into specific instances of conduct of a witness if probative of truthfulness. But we find no abuse of that discretion in the present case.

 Appellant next assigns as error the prosecutor's referral to him as a liar during closing argument, and to his testimony as a lie. None of these comments drew objections from defense counsel and were not raised in the motion for new trial. To preserve error of improper comments, there must be an objection and a request that the court admonish the jury to disregard the comment. *Hickman v. State,* 626 P.2d 873 (Okl.Cr.1981).

 Moreover, it was defense counsel who took the initiative and then repeatedly called the State's witnesses liars. We have

always let it be known that we find such conduct by attorneys appalling. See our opinions in such cases as *Cobbs v. State,* 629 P.2d 368 (Okl.Cr.1981); *Cooper v. State,* 584 P.2d 234 (Okl.Cr.1978); *Lewis v. State,* 569 P.2d 486 (Okl.Cr.1977); *Dupree v. State,* 514 P.2d 425 (Okl.Cr.1973); and, *Ray v. State,* 510 P.2d 1395 (Okl.Cr.1973).

 Appellant claims the above comments plus one in which the prosecutor said:

> Mr. Payne cannot point the finger at anyone and say they did it, but I am going to be about the fifth or sixth person to point the finger at the person who the State claims and who the State submits did it, and it's that man right there in the red shirt [referring to appellant].

had the combined effect of telling the jury that appellant's defense was a total lie. But we find any error was invited by the defense's own conduct, and appellant cannot now for the first time challenge such error. *Pegg v. State,* 659 P.2d 370 (Okl.Cr. 1983). Further, we find that in view of the overwhelming evidence of guilt and the fact that appellant received the minimum sentence for Murder in the First Degree, we find modification or reversal to be unnecessary. *Munn v. State,* 658 P.2d 482 (Okl.Cr.1983); *Collums v. State,* 654 P.2d 1070 (Okl.Cr.1982).

 Appellant claims error occurred by reason of a number of other comments of the prosecution made during closing arguments. Only a few were objected to by defense counsel. We find upon a review of the record that none were so prejudicial as to result in fundamental error, or to have affected the verdict. *Hill v. State,* 589 P.2d 1073 (Okl.Cr.1979).

Finally, appellant contends the trial court erred in not granting to him a suspended sentence. He states that he had no prior convictions and that "intoxication should also be considered as a mitigating factor in this case, justifying suspension."

 The granting of a suspended sentence lies within the trial court's discre-

tion. 22 O.S.Supp.1984, § 991a. We find no abuse of that discretion in this case where the victim was felled by nine shotgun blasts at his own home on apparently little, if any, provocation. The fact that appellant may never have done such a thing had he not been drinking can hardly be said to indicate that the interests of justice would best be served by suspending his sentence. *Compare Graham v. State,* 549 P.2d 360 (Okl.Cr.1976) wherein we considered appellant's drug abuse as a factor in the circumstances of the crime.

Appellant claims in addition that there is no record that he waived a presentence investigation report. The record does show the trial court asked if appellant wanted one and his attorney responded that they wished to postpone that decision. The next recorded event was sentencing. We consider it a fair inference that appellant declined the investigation, and that waiver was effected. *Sarsycki v. State,* 540 P.2d 588 (Okl.Cr.1975).

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

PARKS, P.J., and BRETT, J., concurs.