STATE OF CONNECTICUT *v.* GILBERTO COLON

STATE OF CONNECTICUT *v.* CARMEN PEREZ
(14847)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued March 30—decision released July 5, 1994

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's

attorney, *Paul E. Murray,* senior assistant state's attorney, and *Joan K. Alexander,* assistant state's attorney, for the appellant (state).

*Kent Drager,* assistant public defender, for the appellees (defendants).

CALLAHAN, J. The dispositive issue in these consolidated appeals is whether a search warrant is facially invalid because the issuing judge failed to sign and date a jurat.[1] The defendants, Gilberto Colon and Carmen Perez, were charged with various narcotics offenses. The trial court suppressed evidence seized pursuant to a search warrant that was issued upon the application of two Hartford detectives. The issuing judge, however, had neglected to sign the jurat following the statement, executed by the detectives, that established probable cause. As a result of the suppression, the trial court dismissed the charges against the defendants. The Appellate Court affirmed the judgment of the trial court. We reverse the judgment of the Appellate Court.

On February 6, 1992, Hartford Detectives Michael Perodeau and Stephen Grabowski submitted an application for a search and seizure warrant for 12 Willard Street, apartment 304, to Superior Court Judge Carmen E. Espinosa. *State* v. *Colon,* 32 Conn. App. 402,

---

[1] Both the Appellate Court and the defendants relied on the definition of jurat provided in General Statutes § 3-94a (2): " 'Jurat' means a notarial act in which a notary public certifies that a signatory, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made, in the notary public's presence, a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed document." We note, however, that the definition of jurat contained in § 3-94a pertains to the statutory sections on notaries public, General Statutes §§ 3-94a to 3-95, and has no specific application to the present case.

A jurat is generally defined as "a certificate added to an affidavit stating when, before whom, and where it was made." Webster's Ninth New Collegiate Dictionary; see also *Land Clearance for Redevelopment Authority* v. *Zitko,* 386 S.W.2d 69, 78 (Mo. 1965).

404, 628 A.2d 1347 (1993). Judge Espinosa found that a statement of the detectives contained in the section of the application denominated "affidavit" established probable cause and issued the warrant. The subsequent search of 12 Willard Street, pursuant to the warrant, resulted in the seizure of a substantial quantity of narcotics and $9329 in cash. Id., 405. The defendants were arrested and charged with violations of the narcotics laws. Id.

It was discovered subsequently that Judge Espinosa had neglected to sign the jurat following the detectives' statement in the application for the warrant. Id., 404. Both Perodeau and Grabowski, however, had signed and dated the jurat form in the proper places and in all other respects the application for the warrant had been properly completed and executed. Specifically, the affidavit supporting the request to delay delivery of the warrant, including its jurat, had been properly signed by Judge Espinosa and detectives Perodeau and Grabowski. Judge Espinosa had also properly signed the actual order directing the search. Id., 404–405.

After a hearing, the trial court granted Colon's motion to suppress the evidence seized pursuant to the warrant solely because Judge Espinosa had not signed the jurat following the detectives' signatures. Id., 404 n.2. After granting the state's subsequent motion to open and reconsider its decision, the trial court held a further hearing. Id. At this further hearing, the state introduced, over the objection of defense counsel, an affidavit from Judge Espinosa wherein she attested that she had found probable cause to issue the warrant, that she had properly administered the oath to the affiant officers, that the officers had sworn to the truth of their statement establishing probable cause in her presence and had signed the jurat following their statement, that she had signed the jurat requesting dispensation with the delivery requirement and had signed

the actual search warrant, and that her failure to sign the jurat, following the statement of the detectives that had established probable cause, had been an oversight.

Grabowski testified at the reopened hearing that both he and Perodeau had sworn to the contents of their statement before Judge Espinosa and had affixed their signatures to the jurat form. He further stated that Judge Espinosa had signed the order directing the search in the presence of both officers. Finally, Grabowski testified that neither he nor Perodeau had been aware of the absence of Judge Espinosa's signature on the jurat prior to searching the premises described in the warrant.

The trial court adhered to its prior decision to suppress the evidence and to dismiss the charges against Colon, holding that the unsigned jurat rendered the warrant fatally defective. Perez, the second defendant, subsequently moved to suppress the evidence seized pursuant to the warrant. His motion was granted and the charges against him were also dismissed. The Appellate Court affirmed the trial court's judgments. *State* v. *Colon,* supra, 32 Conn. App. 402.

We granted certification limited to the following issues: "(1) Under the circumstances of this case, did the failure of the issuing judge to sign the jurat on the affidavit invalidate the search warrant? (2) If the answer to question (1) is 'yes,' should the remedy have been exclusion of the evidence seized pursuant to the warrant?" *State* v. *Colon,* 227 Conn. 926, 632 A.2d 705 (1993). Because we conclude that the search warrant was valid despite the unsigned jurat, we need not address the second certified question.

The state argues that Judge Espinosa's failure to sign the jurat following the detectives' statement establishing probable cause did not render the search warrant in question invalid. We agree.

The fourth amendment to the federal constitution provides in part that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." Similarly, article first, § 7, of the Connecticut constitution provides in pertinent part that "no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Neither constitutional provision specifies a particular procedure for evidencing whether probable cause has been supported by oath or affirmation; both simply require that probable cause, in fact, be so supported. See *United States* v. *Turner,* 558 F.2d 46, 50 (2d Cir. 1977) (telephonic oath); *State* v. *Nunn,* 99 Or. App. 503, 506, 783 P.2d 26 (1989); *Vance* v. *State,* 759 S.W.2d 498, 500 (Tex. App. 1988). A jurat provides one effective means of attesting that an affidavit was sworn to under oath, but it is not the only effective or permissible means. *State* v. *Nunn,* supra, 505–506; see also *Gossard* v. *Vawter,* 21 N.E.2d 416, 417 (Ind. 1939); *American Home Life Ins. Co.* v. *Heide,* 199 Kan. 652, 655, 433 P.2d 454 (1967); *Land Clearance for Redevelopment Authority* v. *Zitko,* 386 S.W.2d 69, 78 (Mo. 1965); *People* v. *Rodriguez,* 150 App. Div. 2d 622, 541 N.Y.S.2d 491, cert. denied, 546 N.Y.S.2d 576, 545 N.E.2d 890 (1989); *People* v. *Zimmer,* 112 App. Div. 2d 500, 490 N.Y.S.2d 912 (1985); *State* v. *Flynn,* 33 N.C. App. 492, 494, 235 S.E.2d 424 (1977); *White* v. *State,* 702 P.2d 1058, 1061 (Okla. Crim. 1985). Therefore, the absence of the signed jurat is not a state or federal constitutional violation.

General Statutes § 54-33a (c),[2] however, requires in pertinent part that "[a] warrant may issue only on *affi-*

---

[2] General Statutes § 54-33a (c) provides: "ISSUANCE OF SEARCH WARRANT. . . .

"(c) A warrant may issue only on affidavit sworn to by the complainant or complainants before the judge and establishing the grounds for issuing

*davit* sworn to by the complainant or complainants before the judge and establishing the grounds for issuing the warrant . . . ." (Emphasis added.) The Appellate Court concluded that § 54-33a (c) requires a completed jurat in order to effect an affidavit to support a warrant. In so concluding, the Appellate Court relied principally on its own prior decision in *Willametz* v. *Susi Contracting Co.,* 9 Conn. App. 1, 6–7, 514 A.2d 383, cert. denied, 201 Conn. 814, 517 A.2d 631 (1986), wherein the court held that an unsworn statement purporting to be an affidavit of debt filed in a civil case that recited only that the " '[d]efendant agreed to pay [the] plaintiff the sum of $100,030.00 on September 9, 1977, in settlement of [the] judgment' " was not an affidavit. The court reasoned that the purported affidavit of debt was not an affidavit because it "not only lacked substance, but, more importantly, it lacked the formality required of an affidavit." Id., 6. The court concluded that it lacked the requisite formality because it contained neither an oath by the plaintiff nor any attestation that the statement was made under oath before a person authorized by law to administer an oath. Id., 6–7. By analogy to *Willametz,* the Appellate Court in the present case concluded that the definition of an affidavit necessarily includes the jurat and that, without a signed jurat, the search warrant lacked an "affidavit" as required by § 54-33a (c). *State* v. *Colon,* supra, 32 Conn. App. 406.

the warrant, which affidavit shall be part of the arrest file. If the judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person, place or thing to be searched. The warrant shall be directed to any police officer or a regularly organized police department or any state policeman or to a conservation officer, special conservation officer or patrolman acting pursuant to section 26-6. It shall state the grounds or probable cause for its issuance and it shall command the officer to search within a reasonable time the person, place or thing named, for the property specified."

Even if we were to adopt the rule announced in *Willametz*, we do not read that ruling so expansively. *Willametz* was governed by Practice Book § 366, which provided that "[i]n all actions of contract when damages are to be assessed after entry of default, the plaintiff must *file* an account, copy, statement, or bill of particulars verified by oath, or duly present evidence in court in support of his claim." (Emphasis added.) *Willametz* v. *Susi Contracting Co.*, supra, 9 Conn. App. 6. The plaintiff in *Willametz* neither "filed" the appropriate document verified by oath (i.e., an affidavit) nor presented evidence in court in support of his claim. Because the plaintiff in *Willametz* had presented neither evidence in support of his claim, nor evidence that his statement had been verified by oath, the filing of a self-proving affidavit was required by § 366. In the present case, by contrast, there was evidence that Grabowski and Perodeau had sworn to the facts establishing probable cause and that Judge Espinosa had, in fact, administered an oath to Grabowski and Perodeau prior to issuing the warrant.

Furthermore, in arriving at its decision that the purported affidavit of debt did not qualify as an affidavit, the Appellate Court in *Willametz* relied on the generally accepted definition of "affidavit," stating that an affidavit is " '[a]ny voluntary ex parte statement reduced to writing, *and sworn to or affirmed* before some person legally authorized to administer an oath or affirmation." (Emphasis in original.) Id., 7; Ballentine's Law Dictionary (3d Ed.); see 3 Am. Jur. 2d 380, Affidavits § 1 (1962). This definition does not preclude extrinsic evidence of the administration of an oath, nor does it mandate a signed jurat in order for a document to fall within its parameters. Therefore extrinsic evidence that Judge Espinosa had administered an oath to Grabowski and Perodeau, if credited, would supply the necessary ingredient to support a finding that there was a valid affidavit as defined in *Willametz*.

The Appellate Court, in reaching its conclusion that § 54-33a (c) required a signed jurat, also relied on the general rule that criminal statutes are to be construed strictly in the defendant's favor.[3] *State* v. *Colon,* supra, 32 Conn. App. 406–407. While we also recognize that criminal statutes are to be construed strictly, the language in a criminal statute need not be given its narrowest possible construction. See *State* v. *Roque,* 190

---

[3] The defendant relies on *State* v. *Grant,* 176 Conn. 17, 404 A.2d 873 (1978), for the proposition that because criminal statutes are to be strictly construed, a valid search warrant must be supported by a written statement sworn to before the issuing magistrate, with a jurat signed by the issuing magistrate. In *Grant,* this court considered the statutory requirement that an application for a wiretap warrant be submitted under the oath or affirmation of a state's attorney. In suppressing the evidence seized as a result of the wiretap, we held that the state's attorney's mere acknowledgement on the warrant application form failed to satisfy the requirement that the application be supported by oath or affirmation. Id., 23–24.

*Grant* is inapposite to the present case. This court's decision in *Grant* focused solely on the importance of a sworn affidavit prior to the issuance of the wiretap warrant. In *Grant,* there was neither a signed attestation nor extrinsic evidence that the state's attorney had taken an oath that the statements contained in the affidavit were true. In the present case, there was evidence that Grabowski and Perodeau, in fact, had sworn to the statements contained in the application for the search warrant.

Similarly, *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* 210 Conn. 511, 555 A.2d 990 (1989), is inapposite to the present case. *J. C. Penney Properties, Inc.,* required us to interpret the edict of General Statutes § 49-34 that a certificate of mechanic's lien be "subscribed and sworn to by the claimant." In that case, we held that "the oath must appear in writing on the certificate of mechanic's lien for it to be valid under the statute." Id. In so holding, we relied on *Pendleton* v. *Button,* 3 Conn. 406 (1820), wherein we stated: " 'It is provided by statute, that no deed shall be accounted complete in law, to convey real estate, but such as is written witnessed, *acknowledged,* and recorded. Tit. 142, c. 1., s. 7. The acknowledgment, to be recorded, must necessarily, be in writing; and such is the invariable practice.' " (Emphasis in original.) *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 517. Our holding in *J. C. Penney Properties, Inc.,* that a valid certificate of mechanic's lien contain a written oath, can be attributed to the statutory requirement, contained in § 49-34, that the lien certificate be recorded. Id. The oath, to be recorded, necessarily must be in writing. Because General Statutes § 54-33a (c) contains no similar recording requirement, *J. C. Penney Properties, Inc.,* may be distinguished from the present case.

Conn. 143, 151, 460 A.2d 26 (1983); see also *Singh* v. *Singh,* 213 Conn. 637, 646, 569 A.2d 1112 (1990); *State* v. *Hufford,* 205 Conn. 386, 392, 533 A.2d 866 (1987). Moreover, it is a general principle of statutory construction that words "shall be construed according to the commonly approved usage of language . . . ." General Statutes § 1-1 (a); see also *State* v. *Roque,* supra, 151. Section 54-33a (c) requires only an "affidavit sworn to by the complainant or complainants" in order for a warrant to issue. The term "affidavit" is, as previously noted, commonly defined as "any voluntary ex parte statement reduced to writing, and sworn to or affirmed before some person legally authorized to administer an oath or affirmation." 3 Am. Jur. 2d 380, Affidavits § 1 (1962); see also 2A C.J.S. 435, Affidavits § 2 (1972). Neither the commonly approved definition of the term "affidavit" nor § 54-33a (c) requires a signed jurat. "We have no warrant for interpolating into a criminal statute a requirement it does not now contain."[4] *State* v. *Duhan,* 194 Conn. 347, 358, 481 A.2d 48 (1984).

In suppressing the evidence seized, the trial court stated that it had assumed that Judge Espinosa had administered an oath to the detectives. It found, however, that, because the jurat was not signed, the administration of an oath was not evident from the four corners of the warrant application and, consequently, that there was not a valid affidavit to support the search warrant. The Appellate Court also concluded that a jurat signed by the issuing judge had to appear in the warrant application in order for an affidavit to be valid and that any defect in, or omission of, the jurat could not be remedied by extrinsic evidence.

[4] In other statutory provisions, when the legislature has intended to impose requirements upon the taking of an oath or affirmation it has done so expressly. See, e.g., General Statutes §§ 10a-179 (a), 10a-224 (a), 10a-253 (b), 32-11a (c) and 32-35 (d) (members of various boards shall *take and subscribe* an oath or affirmation prior to assuming office).

We agree that, in determining the adequacy of an affidavit in support of a search warrant, the information to establish probable cause must be found within the affidavit's four corners. See *State* v. *Zarick,* 227 Conn. 207, 216–17, 630 A.2d 565, cert. denied,     U.S.    , 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); *State* v. *Couture,* 194 Conn. 530, 536, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). The purpose of the affidavit, however, is to "enable the issuing authority to weigh the persuasiveness of the facts relied upon by the affiant or complainant and, from them, to determine whether the necessary probable cause exists for the issuance of the warrant." *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315 (1967). Therefore, although probable cause must be determined from the four corners of the warrant, we are not confined to the four corners of the warrant in determining whether the affidavit in support of probable cause has been validly executed. See *Vance* v. *State,* 759 S.W.2d 498, 500 (Tex. App. 1988) ("The 'four corners' doctrine gives us guidance more particularly in determining the sufficiency of the probable cause evidence set out in the affidavit to justify the issuance of the search warrant. The 'four corners' doctrine does not apply to the *jurat* beneath the affidavit. When the *jurat* on its face is defective, the fact that it was properly sworn to may be shown by other evidence."); see also *Huff* v. *Commonwealth,* 213 Va. 710, 712, 194 S.E.2d 690 (1973); 3 Am. Jur. 2d, Affidavits § 17 (1962) ("omission of a jurat or a signature thereto . . . is not fatal to the validity of the affidavit, so long as it appears . . . from evidence aliunde that the affidavit was, in fact, duly sworn to before an authorized officer"). In making the determination that the affidavit in this case was validly executed, we adopt the view that "the jurat is simply evidence of the fact that the affidavit was duly sworn to by the affiant, and, in the event of its omission, the fact that the affidavit was

properly sworn to may be proven by other evidence."[5] *White* v. *State,* supra, 702 P.2d 1061; see also *Gossard* v. *Vawter,* supra, 21 N.E.2d 417; *American Home Life Ins. Co.* v. *Heide,* supra, 199 Kan. 655; *Land Clearance for Redevelopment Authority* v. *Zitko,* supra, 386 S.W.2d 78; *People* v. *Rodriguez,* supra, 150 App. Div. 2d 622; *People* v. *Zimmer,* supra, 112 App. Div. 2d 500; *State* v. *Flynn,* supra, 33 N.C. App. 494; 3 Am. Jur. 2d 393, Affidavits § 16 (1962) ("the jurat is no part of the affidavit, but simply evidence that the affidavit has been duly sworn to by the affiant . . ."); 2A C.J.S. 467, Affidavits § 31 (1972) ("The jurat is not such a part of an affidavit that its omission will render the affidavit a nullity, at least where the affidavit is otherwise properly executed. Thus, ordinarily a jurat is not essential to an affidavit if the fact of the due administration of the oath is otherwise shown . . . .").

---

[5] We recognize that, and the defendants cite, other jurisdictions that have held the jurat to be a necessary part of a valid affidavit. See *Ex Parte Finance America Corp.,* 507 So. 2d 458, 460 (Ala. 1987); *Laurens County* v. *Keen,* 214 Ga. 32, 35, 102 S.E.2d 697 (1958); *Hough* v. *Weber,* 202 Ill. App. 3d 674, 692, 560 N.E.2d 5, cert. denied, 135 Ill. 2d 556, 564 N.E.2d 837 (1990); *Commonwealth* v. *Dozier,* 366 N.E.2d 1270 (Mass. App. 1977); *Commonwealth* v. *McAfee,* 230 Pa. Super. 336, 337, 326 A.2d 522 (1974); *Elam* v. *Yale Clinic,* 783 S.W.2d 638, 643 (Tex. App. 1989).

We note, however, that in at least two of these jurisdictions the term "affidavit" had been defined by statute to require the signature of the officer administering the oath. See, e.g., *Commonwealth* v. *Lardo,* 240 Pa. Super. 107, 368 A.2d 324, 327 (1976), overruled in part, *Commonwealth* v. *Chandler,* 505 Pa. 113, 477 A.2d 851 (1984) (relying on following statutory definition of term affidavit in upholding a search warrant: "A statement in writing of a fact or facts signed by the party making it, sworn to or affirmed before an officer authorized by the laws of this Commonwealth to take acknowledgements of deeds, or authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is to or may be taken, *and officially certified to in the case of an officer under his seal of office."* [Emphasis added.]); *Elam* v. *Yale Clinic,* supra, 783 S.W.2d 643 ("An affidavit is defined as 'a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, *and officially certified to by the officer under his seal of office.'* Tex. Gov't Code Ann. § 312.011 [Vernon 1988]." [Emphasis added.]). The term affidavit has not been defined in our general statutes.

We conclude, therefore, that, although it is preferable that every affidavit contain a completed jurat, the omission of, or a defect in, the jurat does not affect the validity of a warrant issued upon probable cause when it is proven by extrinsic evidence that the supporting affidavit was properly sworn to by the complainants. See, e.g., *State* v. *Nunn,* supra, 99 Or. App. 506; *Vance* v. *State,* supra, 759 S.W.2d 500. Any other conclusion would impose an undue penalty on law enforcement for an inadvertent omission on the part of the issuing magistrate.[6]

Because we conclude that the jurat " 'is no part of the oath' . . . and its absence is a defect curable by subsequent affidavits or testimony"; (citations omitted); *People* v. *Zimmer,* supra, 112 App. Div. 2d 501; the only remaining question is whether there was a proper finding that the affidavit had been sworn to by Grabowski and Perodeau. In the present case, extrinsic evidence was presented through the testimony of Grabowski and an affidavit from Judge Espinosa that the affidavit supporting the warrant had been executed under oath. The trial court, however, did not make a specific finding that Judge Espinosa had administered an oath to the detectives prior to issuing the warrant but merely "assumed" that she had. We therefore remand the case to the trial court for a determination of whether Judge Espinosa did, in fact, administer an oath to Grabowski and Perodeau. If the trial court so finds, the lack of

---

[6] *State* v. *Surowiecki,* 184 Conn. 95, 440 A.2d 798 (1981), cited by the Appellate Court; *State* v. *Colon,* supra, 32 Conn. App. 407; is not inconsistent with our conclusion that an unsigned jurat does not invalidate an otherwise properly issued warrant. In *Surowiecki,* we held that the signature of the issuing judge on the section of the warrant commanding the search itself was necessary before a valid warrant could issue pursuant to General Statutes § 54-33a (c). *State* v. *Surowiecki,* supra, 97. In the present case, the section of the warrant directing the search was signed by Judge Espinosa and, therefore, the warrant complied with *Surowiecki's* mandate that the authority for the search be evident on its face.

a jurat signed by Judge Espinosa does not render the search warrant in this case invalid.

The judgment is reversed and the case is remanded to the Appellate Court with direction to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion PETERS, C. J., and BORDEN, J., concurred.

BERDON, J., dissenting. I agree with the dissenting opinion of Justice Katz that the search warrant in this case was invalid. In view of this court's decisions in *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.*, 210 Conn. 511, 555 A.2d 990 (1989), and *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 620 A.2d 118 (1993), the reasoning of the majority eludes me.

In *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.*, supra, 210 Conn. 512, 518, although the oath was administered to the lienor, there was, as in this case, no written recital of that fact and the court invalidated the lien. In *Red Rooster Construction Co.* v. *River Associates, Inc.*, supra, 224 Conn. 577, 579, although the mechanic's lien was signed by the lienor and the notary memorialized the lienor's oath with a signature, the court held that the failure to conduct a formal ceremony was enough to invalidate the lien. This court in *Red Rooster Construction Co.* reaffirmed its reasoning in *J. C. Penney Properties, Inc.*, as follows: "To validate a mechanic's lien certificate without any evidence that the claimant performed some act or form of ceremony indicating that the claimant consciously undertook the obligation of an oath 'would invite confusion, delay and uncertainty into an area where certainty and complete compliance with the statutory requirements are of paramount importance to inter-

ested parties and the general public.' *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.*, supra, 518." *Red Rooster Construction Co.* v. *River Associates, Inc.*, supra, 579.

I am unable to understand why this court would apply a more forgiving standard in scrutinizing a defective search warrant than the requirement of strict compliance with the formalities of the oath it has repeatedly applied in cases such as *J. C. Penney Properties, Inc.*, and *Red Rooster Construction Co.*, where the validity of a mechanic's lien was challenged. It would seem to me, as Justice Katz points out in her dissenting opinion, that we should be more concerned with the formalities of the oath when the fundamental constitutional right of privacy is implicated, as it is in the present case.

Accordingly, I join Justice Katz in her dissent.[1]

KATZ, J., with whom BERDON, J., joins, dissenting. I disagree with the majority's conclusion that the defective jurat did not invalidate the warrant.

"It has long been recognized that . . . rules of criminal procedure are to be strictly construed to protect the fundamental constitutional right to liberty. See *State* v. *Tedesco,* 175 Conn. 279, 291, 397 A.2d 1352 (1978); *State* v. *Moore,* 158 Conn. 461, 465, 262 A.2d 166 (1969); *Perry* v. *Johnson,* 37 Conn. 32, 35 (1870)." *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981); see also *State* v. *Genotti,* 220 Conn. 796, 807, 601 A.2d 1013 (1992). Additionally, this court has specifically directed that strict construction of statutory provisions pertaining to search warrants is imperative. See *State* v. *Surowiecki,* 184 Conn. 95, 98, 440 A.2d 798 (1981); *State* v. *Cook,* supra, 523. Although the majority acknowledges this rule of strict construction, it

---

[1] I also agree with Justice Katz that a "good faith exception" to the exclusionary rule is inapplicable to this invalid warrant.

nevertheless concludes that "[n]either the commonly approved definition of the term 'affidavit' nor [General Statutes] § 54-33a (c) requires a signed jurat." Such a conclusion is inconsistent with our precedent.

In *State* v. *Surowiecki,* supra, 184 Conn. 97, we strictly construed the word "issue" contained in § 54-33a (c)[1] as requiring a lawful signature on a search warrant in order to ensure its validity. See *State* v. *Cook,* supra, 183 Conn. 523 (holding that arrest warrant signed only by assistant clerk of Superior Court was defective, even though judge, who should have signed warrant, had found probable cause to support it). In that case, the judge reviewed the search warrant application, found that it established probable cause for a search of the areas listed and for a seizure of the items described, administered the oath to the affiant and signed the jurat on the application. *State* v. *Surowiecki,* supra, 96. Because of " 'a mere oversight,' " however, the judge inadvertently failed to sign the actual search warrant. Id. Despite the existence of undisputed extrinsic evidence proving the judge's intention to sign the search warrant,[2] we nevertheless concluded that the judge could not properly have "issued" the search warrant until he had fully performed the act of issuing. Id., 97. We stated that the judge's signature on the search warrant represented the "identifiable objective manifestation of his subjective intent to issue the search warrant," and therefore concluded that in the absence of such a signature, issuance was not complete. Id. We thus strictly construed the word

[1] In *State* v. *Surowiecki,* supra, 184 Conn. 97, we construed that portion of General Statutes § 54-33a (c) which provides that if a judge "is satisfied that grounds for the [warrant] application exist or that there is probable cause to believe that they exist, he [or she] shall *issue* a warrant identifying the property and naming or describing the person, place or thing to be searched." (Emphasis added.)

[2] There was "no dispute that the judge intended to sign the search warrant . . . ." *State* v. *Surowiecki,* supra, 184 Conn. 96.

"issue" to require a lawful signature on a search warrant by the person authorized to issue it, despite the fact that neither the legal lexicon nor the commonly approved definition of the term "issue" required such a result. Id.

The majority concludes that *State* v. *Surowiecki,* supra, 184 Conn. 95, is satisfied in this case because the section of the warrant directing the search was signed by the issuing judge. By so disposing of *Surowiecki,* however, the majority misses the point. That is, the majority fails to explain why in *Surowiecki* we strictly construed the word "issue" to require a lawful signature, yet decline in this case to construe strictly the terms "affidavit" or "sworn to" to require the same.

The majority's conclusion that an unsigned jurat does not affect the validity of a warrant when it is proven by extrinsic evidence that the affidavit was properly sworn to is also inconsistent with *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* 210 Conn. 511, 555 A.2d 990 (1989). In *J. C. Penney Properties, Inc.,* we construed General Statutes § 49-34 (1) (C),[3] directing that a certificate of mechanic's lien must be "sworn to" by the claimant, to require a written recital of the oath-taking on the certificate. Id. We did so despite both the existence of extrinsic evidence proving that an oath had been administered, and the fact that § 49-34 did not explicitly require that the oath-taking be memorialized in writing. Id., 512, 518. We reasoned: "In con-

---

[3] General Statutes § 49-34 (1) (C) provides: "CERTIFICATE OF LIEN TO BE RECORDED AND NOTICE GIVEN TO OWNER. A mechanic's lien is not valid, unless the person performing the services or furnishing the materials, (1) within ninety days after he has ceased to do so, lodges with the town clerk of the town in which the building, lot or plot of land is situated a certificate in writing, which shall be recorded by the town clerk with deeds of land . . . (C) *subscribed and sworn to by the claimant . . . .*" (Emphasis added.)

sidering a statute that authorizes a certificate of mechanic's lien in writing . . . we cannot ascribe to the legislature an intent that an essential part of this certificate need not be in writing. . . . To validate a certificate without a written oath would invite confusion, delay and uncertainty into an area where certainty and complete compliance with the statutory requirements are of paramount importance to interested parties and the general public." Id., 518. We further reasoned that " '[t]o hold there need be no [sworn statement] attached would open the door to fraud difficult to detect.' " Id., quoting *Cook Borden & Co.* v. *Commonwealth,* 293 Mass. 174, 180, 199 N.E. 551 (1936).

It is significant that in *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 210 Conn. 514, we "endorsed a policy favoring *liberal* construction of claimed inadequacies in certificates of mechanics' liens in order to achieve the remedial purposes of the mechanics' lien statutes." See also *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 553, 441 A.2d 171 (1981) ("[p]rovisions of mechanics' lien law should be liberally construed so as to reasonably and fairly implement its remedial intent"). Thus, we held that, even if *liberally* construed, the words "sworn to" contained in § 49-34 required a writing. *J. C. Penney Properties, Inc.* v. *Peter M. Santella Co.,* supra, 518. Certainly, a strict construction of the same words as used in a criminal statute should require nothing less.

Indeed, the policies guiding strict construction of criminal statutes are even more compelling than those justifying our liberal construction of § 49-34. I can think of no sphere in which "certainty and complete compliance with the statutory requirements" are of *greater* "importance to interested parties and the general public" than in the area of fundamental constitutional rights. Id., 518. To validate a warrant that lacks a com-

pleted jurat "would invite confusion, delay and uncertainty" into that arena. Id.

These same policies have persuaded other state courts to hold invalid an affidavit supporting a search warrant in the absence of a valid jurat. See, e.g., *Commonwealth* v. *Dozier,* 5 Mass. App. 865, 366 N.E.2d 1270 (1977) (motion to suppress evidence seized from defendant's apartment and automobile pursuant to search warrant supported by affidavit on which jurat was unsigned properly allowed because document was inadequate on its face as basis for warrant); *Commonwealth* v. *McAfee,* 230 Pa. Super. 336, 339, 326 A.2d 522 (1974) (provision in Pennsylvania constitution that warrant be "supported by oath or affirmation subscribed to by the affiant" implies that there be some written record of fact that affiant was in fact sworn, to which he can subscribe, and mere oral testimony that affidavit upon which warrant issued was made under oath would not comply with this clause); see also footnote 5 of the majority opinion and cases cited therein.

I conclude that in the absence of a completed jurat, the affidavit signed by Detectives Grabowski and Perodeau was not properly sworn to and that the warrant was therefore invalid. Finally, I do not agree with the state that the "good faith" exception to the exclusionary rule approved in *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), is applicable to this invalid search warrant. I agree with the Appellate Court that we decided that issue in *State* v. *Marsala,* 216 Conn. 150, 579 A.2d 58 (1990). Accordingly, I would affirm the judgment of the Appellate Court.