**Freddie James SMITH, Appellant**

v.

**STATE of Texas.**

**No. PD–1814–05.**

Court of Criminal Appeals of Texas.

Nov. 22, 2006.

Jules L. Laird Jr., Houston, for Appellant.

Alan Curry, Asst. District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined.

In this case of first impression, we address whether a search warrant is defective if the affiant swore before the magistrate that the facts within the affidavit were true, but he failed to sign the affidavit.[1]

Police officers obtained a search warrant as a part of their investigation of appellant for identity theft and fraud. Although the affiant swore before the magistrate to the truth of the facts within the affidavit, he forgot to sign it. Not noticing that omission, the magistrate signed the search warrant, and the officers executed it. While searching appellant's house, the officers found two shotguns and he was charged with possession of a firearm by a felon. Because the officer failed to sign his affidavit, appellant sought to suppress the evidence obtained during the search. The trial court denied the motion to suppress, appellant pleaded guilty to possession of a firearm by a felon, and he was sentenced to 10 years' imprisonment. The court of appeals held that an affidavit need not be signed to be properly sworn.[2] We agree and hold that the failure to sign a search warrant affidavit does not, by itself, invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate.

## I.

In December of 2002, Lisa Stark contacted Officer Thomas Griffin of the Houston Police Department to report an identity theft. Ms. Stark had received a call from Citibank informing her that someone had opened a Visa account in her name at Gordon Jewelry and had tried to open an account at Zales. She had also received a letter from the U.S. Postal Service (USPS) confirming her change of address to 6210½ Rand Street, but she had not submitted any such request. In June of 2003, Ms. Stark received a call from American Express informing her that her account was past due in the amount of $10,000. Ms. Stark told American Express that she did not open the account and knew nothing about the charges. American Express told Ms. Stark that it sent the credit card to 6210½ Rand Street.

Officer Griffin, who had eleven years' experience in the forgery division, then contacted a U.S. Postal Inspector, who told the officer that two additional change-of-address forms had been sent to the USPS changing an address to 6210½ Rand Street. Officer Griffin also contacted the mail carrier assigned to 6210½ Rand Street, who said that he had been delivering mail to Ms. Stark at that address.

Officer Griffin drafted and presented his Affidavit in Support of a Search Warrant to District Judge William Harmon. The affidavit set out all the facts pertaining to Officer Griffin's investigation of the identify theft of Ms. Stark. Officer Griffin

1. We granted review on one ground:
   The trial court abused its discretion in denying the Appellant's Motion to Suppress evidence, where the search warrant was unsigned, and where the good faith exception does not apply.

2. *Smith v. State*, No. 14–04–00328–CR, 2005 WL 2230262, 2005 Tex.App. LEXIS 7621 (Tex.App.-Houston [14th Dist.] Sept. 13, 2005) (not designated for publication).

swore to the facts in the affidavit and requested Judge Harmon to authorize a search of the residence at 6210½ Rand Street. Judge Harmon signed and issued the search warrant, and the police searched appellant's home and found two shotguns.

Appellant filed a motion to suppress evidence, and the trial court held a hearing without live testimony. Both Officer Griffin and Judge Harmon submitted affidavits. In his affidavit, Officer Griffin stated that he personally swore before Judge Harmon to the truth of the facts set out in the affidavit and explained that his failure to sign the probable cause affidavit was a mistake. Judge Harmon, in his affidavit, stated that he did not specifically remember the incident in which Officer Griffin requested the search warrant, but he said that it is his "standard practice" to have the police officer swear that "the affidavit [is] true and correct to the best of his or her knowledge." Judge Harmon stated that he had no reason to doubt that he followed his standard practice in this case.

After the trial court denied the motion to suppress, appellant pleaded guilty and appealed the pretrial ruling. The court of appeals affirmed the trial court's ruling, holding that, when Officer Griffin swore before Judge Harmon, the affidavit was "solemnized."[3] In support of its holding, the court relied on *Selph v. State*[4] and *Vance v. State*.[5] The court of appeals concluded that, because the warrant, signed by Judge Harmon, stated that Officer Griffin swore to the truth of the facts contained in the affidavit and the warrant and affidavit were stapled together, the two documents could be read as one.[6] Thus, under *Selph*, the affidavit was properly sworn.[7] The court of appeals also relied on *Vance* in holding that it is the oath of the affiant that solemnizes the affidavit-not the signature.[8] Because Officer Griffin swore to the truth of the affidavit, he took an oath and solemnized the affidavit. Therefore, the court found the affidavit sufficient for the issuance of the search warrant.[9]

## II.

The Code of Criminal Procedure makes it clear that an affiant must swear that he has knowledge of the facts within his writ-

3. *Smith*, 2005 WL 2230262, at *2, 2005 Tex. App. LEXIS 7621, at *4–5.

4. *Selph v. State*, No. 14–03–01112–CR, 2005 WL 851184, 2005 Tex.App. LEXIS 2854 (Tex. App.-Houston [14th Dist.] April 14, 2005, no pet.) (not designated for publication). In *Selph*, the affiant did not sign the affidavit. *Id.* 2005 WL 851184, at *3, 2005 Tex.App. LEXIS 2854, at *8. In the warrant, the magistrate stated that the officer swore before him that the facts in the affidavit were true. *Id.* 2005 WL 851184, at *4, 2005 Tex.App. LEXIS 2854, at *9. The court in *Selph* held that when the magistrate states in the warrant that the affiant swore to his statement, the affidavit may be incorporated by reference into the warrant when the two are stapled together. *Id.*

5. *Vance v. State*, 759 S.W.2d 498 (Tex.App.-San Antonio 1998, pet. ref'd). In *Vance*, the facts were the same as they are here: the

police officer swore before the magistrate but forgot to sign the affidavit; the judge issued the warrant; and the search yielded the evidence that resulted in the defendant's conviction. *Id.* at 499–500. The *Vance* court held, "It is the oath of the affiant that solemnizes his affidavit"—not his signature. *Id.* at 500. The court concluded that if the jurat is defective, the fact that the affidavit was properly sworn to may be shown by other evidence. *Id.*

6. *Smith*, 2005 WL 2230262, at *1, 2005 Tex. App. LEXIS 7621, at *4–5.

7. *Id.*

8. *Id.* 2005 WL 2230262, at *1, 2005 Tex.App. LEXIS 7621, at *4.

9. *Id.* 2005 WL 2230262, at *1, 2005 Tex.App. LEXIS 7621, at *5.

ten affidavit and that those facts establish probable cause.[10] Article 18.01(b) reads:

No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A *sworn affidavit* setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested[.] [11]

Similarly, the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." [12] Neither document, however, specifically requires a *signature;* they require only an *oath.*

The purpose of this oath is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seri-ousness and responsibility.[13] When an individual swears under oath, society's expectation of truthfulness increases and the legal consequences for untruthfulness—prosecution for perjury, for example—may be severe. The purpose of the written affidavit is to memorialize the affiant's recitation of the facts, conclusions, and legal basis for the issuance of the search warrant.[14] Without a written affidavit, citizens and courts would not be able to determine if the search warrant had been properly issued unless the affiant physically appeared before the trial judge after the search to recount the factual basis for requesting the search warrant.[15] By then, the affiant may have relocated or for some other reason become unavailable. Even if the affiant were still available, his memory of both the specific facts and his conclusions may have faded. The purpose of the affiant's signature, however, is different.

10. Tex.Code Crim. Proc. art. 18.01(b).

11. *Id.* (emphasis added).

12. U.S. Const. amend. IV.

13. *See United States v. Turner,* 558 F.2d 46, 50 (2nd Cir.1977) ("An 'Oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed."); *United States ex rel. Pugh v. Pate,* 401 F.2d 6, 7 (7th Cir.1968) (stating that the oath requirement forces someone to take ultimate responsibility for the facts alleged in the affidavit); *State v. Tye,* 248 Wis.2d 530, 636 N.W.2d 473, 478 (2001) ("An oath is a matter of substance, not form, and it is an essential component of the Fourth Amendment and legal proceedings. The purpose of an oath or affirmation is to impress upon the swearing individual an ap-propriate sense of obligation to tell the truth. An oath or affirmation to support a search warrant reminds both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved. An oath or affirmation protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information.") (footnotes omitted).

14. *See Boyer v. Arizona,* 455 F.2d 804, 807 (9th Cir.1972) (Ely, J., dissenting) (arguing that the court needs to have as much written documentation relating to the issuance of the search warrant as possible; "The problem inherent in relying upon belated oral testimony to find that the existence of probable cause was demonstrated at an earlier hearing is obvious. Memories are blurred by the passage of time and by the wisdom gained through hindsight. Critical facts may be forgotten, and the possible initial uncertainly of the affiant may vanish when the search proves to be fruitful. Inadvertent additions to the remembered conversation are not unlikely.").

15. *Id.*

It memorializes the fact that he took the oath; it is not an oath itself.

■ This court has never addressed the question of whether an affidavit under article 18.01(b) requires the affiant's signature in addition to an oath.[16] Two Texas appellate courts have addressed this issue. In *Hunter v. State*,[17] the Waco Court of Appeals held that a signature was necessary to constitute a "sworn affidavit" under article 18.01(b). The court relied on the common usage of the word "affidavit" and indicated that it usually requires a signature.[18] But the San Antonio Court of Appeals in *Vance* held the opposite—that the lack of a signature would not invalidate the affidavit if it could be shown that the affidavit was solemnized by other means.[19] Courts in other states have also addressed this issue.[20] We agree with *Vance* and the

---

16. In *Gordon v. State*, 29 Tex. Ct.App. 410, 412, 16 S.W. 337, 338 (1891), two attorneys submitted an affidavit to the court but it lacked their signatures, a jurat certifying that an oath was administered, or anything "to indicate that they were sworn to its contents." The court of appeals, relying on a statute that expressly required the signature of an affiant, held that the affidavit was deficient and thus invalid. The statute upon which the court relied has since been repealed.

17. 92 S.W.3d 596 (Tex.App.-Waco 2002, pet. ref'd).

18. *Id.* at 601–02. In *Hunter*, the court of appeals noted that article 18.01 does not define the word "affidavit," and thus it looked to its common usage. *Id.* at 601. The court consulted the definition of affidavit in BLACK's LAW DICTIONARY: "An 'affidavit' is '[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths.'" *Id.* at 602. That definition does not expressly require a signature. The court looked to WEBSTER's INTERNATIONAL DICTIONARY which provides a similar definition and adds that " '[a]n affidavit must sufficiently identify the person who makes it, usually by his subscribed signature.'" *Id.* That definition does not necessarily require a signature, though it is the "usual" mode. The court then looked at TEX. GOV'T CODE § 312.011(1), which pertains to the construction of civil statutes. *Id.* That provision states that, "unless a different meaning is apparent from the context of the statute in which the word appears[,]" an " '[a]ffidavit' means a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified by the officer under his seal of office." This is indeed the usual definition in Texas of an affidavit. But that definition does not mean that every "affidavit" that is properly sworn to, yet unsigned, is necessarily invalid or "void." In *Hunter*, the court of appeals concluded that the unsigned affidavit did not meet all of the requirements of the civil Government Code statute and hence it did not meet the "sworn affidavit" requirement of article 18.01(b). *Id.* Nonetheless, the court of appeals upheld the search pursuant to the defective warrant under the good faith exception to the warrant requirement under article 38.23(b). *Id.* at 604.

19. *Vance*, 759 S.W.2d at 499.

20. Several states have held that a signature on the affidavit is not essential to prove the validity of that affidavit. *See State v. Colon*, 230 Conn. 24, 644 A.2d 877, 883 (1994) (" 'the jurat is simply evidence of the fact that the affidavit was duly sworn to by the affiant, and, in the event of its omission, the fact that the affidavit was properly sworn to may be proven by other evidence' ") (quoting *White v. State*, 702 P.2d 1058, 1061 (Okla.Crim.App. 1985)); *Bigler v. State*, 602 N.E.2d 509, 516–517 (Ind.App.1992) ("The jurat is not a part of the affidavit, but simply evidence that an oath was taken.... [O]mission of a jurat is not fatal to the validity of an affidavit so long as it appears either from the instrument itself or from evidence aliunde, that the affidavit was, in fact, duly sworn to before an authorized officer."); *State v. Journey*, 1 Kan.App.2d 150, 562 P.2d 138, 141 (1977) (same); *People v. Tice*, 220 Mich.App. 47, 558 N.W.2d 245, 247 (1996) (same); *Powell v. State*, 355 So.2d 1378, 1380 (Miss.1978) (applying rule to magistrate's missing signature); *People v. Zimmer*, 112 A.D.2d 500, 501, 490 N.Y.S.2d 912 (N.Y.App.Div.1985) (rule applied to affiant); *State v. Flynn*, 33 N.C.App. 492, 235 S.E.2d 424, 425 (1977) (magistrate); *State v. Nunn*, 99 Or.App. 503, 783 P.2d 26, 27 (1989) (magistrate); *State v. Keith*, 978 S.W.2d 861, 868 (Tenn.1998) (affiant); *Huff v. Commonwealth*, 213 Va. 710, 194 S.E.2d 690, 692 (1973)

majority of the out-of-state courts and hold that the failure to sign the warrant affidavit does not invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate.

The present situation might usefully be compared to that of self-proved wills. A will may be made self-proved by the affidavits of the testator and his attesting witnesses, as long as the affidavits are signed and certified in accordance with the specific statutory requirements.[21] A self-proved will may be admitted to probate court without the need for testimony of a subscribing witness,[22] but a will is not invalid simply because it does not contain the statutory affidavits. It merely does not qualify as a self-proved will, and the proponent of the will must call one or more of the attesting witnesses to testify.[23]

Although the affiant's signature on an affidavit serves as an important memorialization of the officer's act of swearing before the magistrate, it is that act of swearing, not the signature itself, that is essential. It is important, too, that the law retain some flexibility in the face of technological advances. For example, the federal courts and some state courts, now permit telephonic search warrants,[24] and one can foresee the day in which search warrants might be obtained via e-mail or a recorded video conference with a magistrate located many miles away. In a state as large as Texas,[25] such innovations

---

(affiant); *State v. Davis*, 182 W.Va. 482, 388 S.E.2d 508, 512 (1989) (affiant). A few states have held that a signature is required; in these cases, though, either a statutory provision or the state constitution required the signature. *See Commonwealth v. Dozier*, 5 Mass.App.Ct. 865, 366 N.E.2d 1270 (1977) (holding that an unsigned affidavit did not meet statutory requirement); *Commonwealth v. McAfee*, 230 Pa.Super. 336, 326 A.2d 522 (1974) (holding that an unsigned affidavit did not meet the state constitutional requirement to constitute a valid affidavit).

**21.** *See* Tex. Prob.Code § 59(a).

**22.** *See id.* § 59(b).

**23.** *See Cutler v. Ament*, 726 S.W.2d 605, 607–08 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.).

**24.** Telephonic warrants are permitted under the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 41(d)(3). In these instances, the officer requesting the search warrant does not sign an affidavit but swears to the truth of his statements. Fed.R.Crim.P. 41(d)(3)(B)(i). Several states also allow telephonic warrants, including Alaska, Arizona, California, Colorado, Delaware, Idaho, Illinois, Minnesota, Nebraska, and South Dakota. *See* Justin H. Smith, Note, *Press One for Warrant: Reinventing the Fourth Amendment's Search Warrant Requirement Through Electronic Procedures*, 55 Vand. L.Rev. 1591, 1607–1613 (2002). Further, "advances in digital imaging, remote video transmission, cellular communication, and encryption technology should further enhance the reliability and desirability of telephonic search warrants." *Id.* at 1595.

**25.** For example, in some rural areas of Texas there may be, on occasion, a single magistrate available within several counties. Requiring the affiant to spend the time traveling from the site subject to a legitimate search to the magistrate, physically standing in front of him, signing the affidavit, personally obtaining the signature of the magistrate on the warrant, and then traveling back to the search site to execute that warrant may well be a practical deterrent to officers. This is especially true when officers are engaged in the investigation of rapidly unfolding events and have a legitimate need to act quickly to prevent further crime and preserve evidence. *See generally*, Geoffrey P. Alpert, *Telecommunications in the Courtroom: Telephonic Search Warrants*, 38 U. Miami L.Rev. 625, 634 (1984) (noting that states such as Arizona and California were the first to enact legislation for telephonic search warrants because they have "wide open spaces and great distances between cities and judges").

The United States and Texas Constitutions have a definite preference for searches under warrant, but if the cost, in terms of time, effort, and the likelihood of escape, are too great, officers (and judicial officers after them) may well seek opportunities to avoid

should not be foreclosed by the requirement of a signed affidavit if the officer's oath can be memorialized by other, equally satisfactory, means. We leave those potential future changes to the Texas Legislature, but we should not stand in the way of the future by declaring that all affidavits, which are properly sworn to but unsigned, are necessarily invalid. That is not to condone carelessness or sloppiness in either police procedure or judicial oversight. Forgetfulness or carelessness in the formalities of an affidavit may well indicate to either the issuing magistrate or the reviewing court that the officer is forgetful or careless in his factual statements as well. Such forgetfulness may affect the credibility of the officer, but that is a matter for magistrates and trial courts. It is sufficient for today to simply conclude that an affiant's failure to sign his affidavit is not necessarily fatal if it can be proved by other means that he did swear to the facts contained within that affidavit before the magistrate.

## III.

■ Turning to the present case, three pieces of evidence prove that Officer Griffin did personally swear, before Judge Harmon, to the truth of the facts in his affidavit. First, Officer Griffin submitted a signed affidavit at the suppression hearing stating that he did swear before Judge Harmon that the facts in the affidavit were "true and correct to the best of his knowledge." Second, Judge Harmon submitted a signed affidavit stating that, while he does not remember this specific instance, it is his "standard practice" to have affiants swear to the truthfulness of their affidavits. Third, the warrant to which Officer Griffin's unsigned affidavit was attached, stated that the affiant swore before the magistrate. This warrant is signed by Judge Harmon. Therefore, we conclude that there is ample evidence showing that Officer Griffin's affidavit was sworn to under oath and that the affidavit and search warrant are valid under article 18.01(b).

the warrant requirement and, instead, act without a warrant and hope that there is an exception to the warrant requirement that will, *post hoc*, justify their conduct. *See generally Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("The Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant,' and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.") (citation omitted); *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search.... Reflecting this preference for the warrant process, the traditional standard

for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... [concluding]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."); *Trupiano v. United States*, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948) ("It is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants wherever reasonably practicable. This rule rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible.... In their understandable zeal to ferret out crime and in the excitement of the capture of a suspected person, officers are less likely to possess the detachment and neutrality with which the constitutional rights of the suspect must be viewed.") (internal citations omitted); *Swearingen v. State*, 143 S.W.3d 808, 810 (Tex.Crim.App.2004) (following Supreme Court precedent and stating that this Court has a "strong preference" for search warrants).

 The appellant argues that upholding the validity of an affidavit when the affiant's signature is missing from the jurat violates the "Four Corners Rule" because courts must look to evidence outside of the four corners of the affidavit to determine whether the affiant swore to its truth.[26] The "four corners" doctrine states that a court is to determine whether the magistrate had sufficient facts to establish probable cause to issue a search warrant based upon the "four corners" of the affidavit.[27] The four corners rule applies only to the assessment of probable cause; it does not apply to the issue of whether the affiant swore to the affidavit's truthfulness. The "four corners" rule, then, is not applicable in this case.

The appellant also argues that an affidavit is, as a matter of law, not an "affidavit" unless it is signed by the affiant. But as discussed above, there is no statutory requirement that an affidavit be signed. Article 18.01(b) requires an oath, not a signature.

Finally, appellant argues that the "good faith" exception to the exclusionary rule set out in article 38.23(b)[28] does not apply to the formal portions of an affidavit, such as the affiant's signature. In the court of appeals, Justice Edelman wrote a short concurrence in this case. He concluded that appellant's challenge to the validity of the unsigned affidavit was "moot," as the Texas statutory "good faith" exception would uphold the action of the officers because they "were acting in objective good faith reliance on the warrant."[29] We need not address the applicability of the "good faith" exception in this case because we have concluded that the warrant was valid despite the fact that Officer Griffin failed to sign the affidavit.

We therefore affirm the judgment of the court of appeals.

KELLER, P.J., dissented.

**26.** Appellant's Brief at 14.

**27.** *Hankins v. State*, 132 S.W.3d 380, 388–89 (Tex.Crim.App.2004) (holding that there were insufficient facts within the "four corners" of the affidavit to establish probable cause); *see also State v. Colon*, 230 Conn. 24, 644 A.2d 877, 882–883 (1994) (rejecting defendant's claim that "the four corners rule" that applies to the determination of probable cause in a search warrant also applies to the signing of the jurat; magistrate's failure to sign the warrant jurat did not invalidate the warrant; concluding that "although it is preferable that every affidavit contain a completed jurat, the omission of, or a defect in, the jurat does not affect the validity of a warrant issued upon probable cause when it is proven by extrinsic evidence that the supporting affidavit was properly sworn to by the complainants. Any other conclusion would impose an undue penalty on law enforcement for an inadvertent omission on the part of the issuing magistrate.") (internal citation omitted).

**28.** Tex.Code Crim. Proc. art. 38.23(b) reads:

It is an exception [to the exclusionary rule] that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

**29.** *Smith*, 2005 WL 2230262, at *4, 2005 Tex. App. LEXIS 7621, at *10–11 (Edelman, J., concurring).