18 So.3d 1180 (2009)
The STATE of Florida, Appellant,
v.
Alfredo MORENO-GONZALEZ, Appellee.
No. 3D08-1094.
District Court of Appeal of Florida, Third District.
September 30, 2009.
Rehearing Denied October 27, 2009.
Bill McCollum, Attorney General, and Nikole Hiciano, Assistant Attorney General, for appellant.
Martin L. Roth, Fort Lauderdale, for appellee.
Before COPE, CORTIÑAS, and LAGOA, JJ.
CORTIÑAS, J.
We review a trial court order suppressing evidence on the ground that the officer did not sign the affidavit in support of the search warrant. Although the affidavit was not signed, it is undisputed that probable cause was shown by the officer swearing to the allegations in the affidavit under oath before the judge, initialing each of the pages of the affidavit, and also initialing *1181 each of the three pages of the search warrant.
Article I of the Florida Constitution sets forth a declaration of certain rights. Among these is the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. Art. I, § 12, Fla. Const. In order to protect this right, Article I, Section 12, of the Florida Constitution provides that:
No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.
Art. I, § 12, Fla. Const.
The sentence, requiring this right to "be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court," was added in a 1982 amendment to Article I, Section 12. The Commentary to this section details the history of the 1982 amendment as follows:
The exclusionary rule, which holds that evidence obtained in violation of a person's right to be secure against unreasonable searches and seizures is inadmissible as evidence, was recognized by Florida courts in 1927, Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927), and was first placed in the state constitution in its 1968 revision.
From the mid-1970's to the early 1980's, federal courts began developing a good faith exception to the exclusionary rule such that evidence could be admitted when an officer reasonably and in good faith believed the search or seizure was lawful. See, e.g., Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); United States v. Williams, 622 F.2d 830 (5th Cir.1980). In a series of state cases, Florida courts rejected the opportunity to adopt a good faith exception, finding that the citizens of Florida provided themselves with greater protection from governmental intrusion than that afforded by the federal constitution. State v. Sarmiento, 397 So.2d 643 (Fla.1981); Hoberman v. State, 400 So.2d 758 (Fla.1981). In response, the governor, attorney general, state prosecutors, and the law enforcement community supported a joint resolution in the 1982 Regular Session, which would have engrossed a good faith exception onto the constitutional exclusionary rule. Significant opposition precluded its passage in the regular session.
In Special Session H, the "conformity" language that was ultimately adopted was presented as a compromise and was approved for ballot placement. Opponents filed suit to enjoin the amendment from appearing on the ballot, asserting that the ballot summary was misleading and did not fully advise the electors of its effect. Grose v. Firestone, 422 So.2d 303 (Fla.1982). The Florida Supreme Court allowed the measure to remain on the ballot and it was adopted.
William A. Buzzett & Deborah K. Kearney, Commentary to 1982 Amendment, 25A, Fla. Stat. Ann., Art. I, § 12, Fla. Const. (2004).
Thus, prior to passage of the 1982 revisions to Article I, Section 12, Florida courts "were free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the federal constitution." State v. Lavazzoli, 434 So.2d 321, 323 (Fla. 1983). *1182 With this amendment, however, Florida courts became bound to follow the interpretations of the United States Supreme Court with relation to the Fourth Amendment, and provide no greater protection than those interpretations. See State v. Butler, 655 So.2d 1123, 1125 (Fla.1995) ("This Court is bound, on search and seizure issues, to follow the opinions of the United States Supreme Court regardless of whether the claim of an illegal arrest or search is predicated upon the provisions of the Florida or United States Constitutions.") (citations omitted); Bernie v. State, 524 So.2d 988, 992 (Fla.1988). Indeed, an exclusionary rule that was once constitutionally mandated in Florida can now be eliminated by judicial decision of the United States Supreme Court. Bernie, 524 So.2d at 990-91. We note that our Supreme Court has not addressed the post-1982 interplay of the above-quoted sentences in Article I, Section 12, where a search warrant was procured upon probable cause shown by an officer who swore to the allegations in the affidavit under oath before the judge, initialed each of the pages of the affidavit, and also initialed each of the three pages of the search warrant but did not sign the affidavit.
We are guided by the rule of statutory construction that all parts of a statute must be read together in order to achieve a consistent whole. Larimore v. State, 2 So.3d 101 (Fla.2008); Bush v. Holmes, 919 So.2d 392, 406-07 (Fla.2006); United Auto. Ins. Co. v. Salgado, ___ So.3d ___ (Fla. 3d DCA 2009). "Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). While our colleague in dissent would have us exclusively focus our inquiry on the words "supported by affidavit," we are required to construe the right against unreasonable searches and seizures "in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const.
Our dissenting colleague inappropriately relies on State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982), which was a 1982 case that was decided prior to the effective date of the 1982 amendment requiring Florida courts to follow the interpretations of the United States Supreme Court with relation to the Fourth Amendment. Unless otherwise stated, the effective date for an amendment to the Florida Constitution is the first Tuesday after the first Monday in January following the election. Art. XI, § 5(e), Fla. Const. Thus, Tolmie was decided prior to January 4, 1983, the effective date of the 1982 amendment, at a time that the Florida Constitution permitted Florida courts to more strictly interpret the Fourth Amendment and thus require that the failure to sign a search warrant affidavit was fatal. However, through a constitutional amendment approved by Florida voters, since January 4, 1983 to the present, that is no longer the law. Instead, as the Florida Supreme Court has held, "the 1982 amendment to article I, section 12, of the Florida Constitution brings this state's search and seizure laws into conformity with all decisions of the United States Supreme Court rendered before and subsequent to the adoption of that amendment...." Bernie v. State, 524 So.2d at 992.
The Fourth Amendment to the United States Constitution provides as follows:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, *1183 and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.
In construing the Fourth Amendment, the United States Supreme Court has stated that "courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); see United States v. Mendoza, 491 F.2d 534, 539 (5th Cir.1974). The Court has held that
[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.
Ventresca, 380 U.S. at 108, 85 S.Ct. 741 (emphasis added).
To argue that this holding is not binding on Florida courts after the approval of the 1982 amendment to our Constitution is to ignore the will of the people. The very first words of the Florida Constitution provide that "[a]ll political power is inherent in the people." Art. I, § 1, Fla. Const. The people have spoken and required that, under our Constitution, the right against unreasonable searches and seizure "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Art. I, § 12, Fla. Const. Yet, our dissenting colleague would do precisely what the United States Supreme Court dictated should not be done, that is, invalidate the warrant by interpreting the affidavit in a "hypertechnical" manner despite the fact that the contents of the affidavit were sworn to under oath and each page initialed by the officer. Respectfully, the absence of a case that is identical to this one does not give judicial officers the authority to ignore the "teachings of the Court's cases" and the clear dictate that "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." With respect to the issue of technical flaws in an affidavit, there is no doubt that the U.S. Supreme Court has clearly addressed and spoken on this issue. So clear are the Supreme Court's teachings on this issue that there is not a single Federal case that would support the dissent's view. Under our state constitution, we must adhere to the U.S. Supreme Court's teachings and dictates.
The Fourth Amendment has been interpreted to require that probable cause must be supported by oath or affirmation, and not necessarily by an affidavit. See Whiteley v. Warden, 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); McGrain v. Daugherty, 273 U.S. 135, 158, 47 S.Ct. 319, 71 L.Ed. 580 (1927); Ex parte Burford, 7 U.S. 448, 451, 2 L.Ed. 495 (1806); see also Christofferson v. Washington, 393 U.S. 1090, 89 S.Ct. 855, 21 L.Ed.2d 783 (1969) (Brennan, J., dissenting). Language in these Supreme Court decisions has been relied upon to support the conclusion that the Fourth Amendment does not require sole reliance upon an affidavit, see United States ex rel. Gaugler v. Brierley, 477 F.2d 516, 522 (3d Cir.1973), and Federal Circuit Courts have held that "[t]he Fourth Amendment does not require that the basis *1184 for probable cause be established in a written affidavit...." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir.1994).
In Mendoza, the federal Fifth Circuit addressed a case analogous to the one before us where the search warrant affidavit was signed by a different officer than the one making the declarations in the affidavit. Stating it was following the United States Supreme Court's interpretation of the Fourth Amendment, the court found that the technical deficiency was not fatal because both officers swore under oath that the contents of the affidavit were true and correct. The court, in Mendoza, held that courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner, quoting from the United States Supreme Court's interpretation of the Fourth Amendment in Ventresca. Mendoza, 491 F.2d at 539. Similarly, in our case, the officer testified he swore to the allegations in the affidavit under oath before the judge and initialed each of the pages of the affidavit as well as initialed each of the three pages of the search warrant. Under the U.S. Supreme Court's interpretation of the Fourth Amendment, it would be entirely unrealistic and lacking in common sense to find that the technical deficiency of failing to sign a document, the contents of which were sworn to under oath and initialed on each page, is fatal to the question of probable cause for the issuance of a search warrant.
Moreover, although the Florida Constitution provides that probable cause is to be "supported by affidavit,"[1] this requirement may also be satisfied by oath or affirmation under section 92.525, Florida Statutes, which provides, in pertinent part, as follows:
(1) When it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner:
(a) Under oath or affirmation taken or administered before an officer authorized under s. 92.50 to administer oaths...
§ 92.525, Fla. Stat. (2007). The term "document" is further defined as "any writing including, without limitation, any form, application, claim, notice, tax return, inventory, affidavit, pleading, or paper." § 92.525(4)(b), Fla. Stat. (2007) (emphasis added). Furthermore, in Florida:
Oaths, affidavits, and acknowledgments required or authorized under the laws of this state (except oaths to jurors and witnesses in court and such other oaths, affidavits and acknowledgments as are required by law to be taken or administered by or before particular officers) may be taken or administered by or before any judge, clerk, or deputy clerk of any court of record within this state, including federal courts, or before any United States commissioner or any notary public within this state. The jurat, or certificate of proof or acknowledgment, shall be authenticated by the signature and official seal of such officer or person taking or administering the same; however, when taken or administered before any judge, clerk, or deputy clerk of a *1185 court of record, the seal of such court may be affixed as the seal of such officer or person.
§ 92.50(1), Fla. Stat. (2007). Because section 92.525 provides that any document, which expressly includes an affidavit, requiring verification may be so verified by oath, and section 92.50(1) allows for such an oath to be taken or administered in front of any judge of any court of record before this state, we are satisfied that the affidavit at issue was sufficient to support the issuance of the warrant and the absence of a signature was not fatal.
The precise issue before us has been addressed by a Texas court in a case that is virtually identical to ours. In Smith v. State, 207 S.W.3d 787 (Tex.Crim.App. 2006), the Court of Criminal Appeals of Texas examined the sufficiency of an unsigned affidavit written and presented by an officer to a district court judge in support of a search warrant. The officer in Smith set out all of the facts pertaining to his investigation in a probable cause affidavit and swore to them, but failed to actually sign the document. Id. at 788-89. As in Florida, Texas law specifically provides that "[a] sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." Id. at 790-91, n. 10; Tex.Code Crim. Proc. Ann. Art.18.01(b). Nevertheless, after examining evidence of the officer swearing to the affidavit, the court upheld the validity of the affidavit and found that:
Although the affiant's signature on an affidavit serves as an important memorialization of the officer's act of swearing before the magistrate, it is that act of swearing, not the signature itself, that is essential. It is important too, that the law retain some flexibility in the face of technological advances. For example the federal courts and some state courts, now permit telephonic search warrants, and one can foresee the day in which search warrants might be obtained via e-mail or a recorded video conference with a magistrate located many miles away. In a state as large as Texas, such innovations should not be foreclosed by the requirement of a signed affidavit if the officer's oath can be memorialized by other, equally satisfactory, means. We leave those potential future changes to the Texas Legislature, but we should not stand in the way of the future by declaring that all affidavits, which are properly sworn to but unsigned, are necessarily invalid. That is not to condone carelessness or sloppiness in either police procedure or judicial oversight. Forgetfulness or carelessness in the formalities of an affidavit may well indicate to either the issuing magistrate or the reviewing court that the officer is forgetful or careless in his factual statements as well. Such forgetfulness may affect the credibility of the officer, but that is a matter for magistrates and trial courts. It is sufficient for today to simply conclude that an affiant's failure to sign his affidavit is not necessarily fatal if it can be proved by other means that he did swear to the facts contained within that affidavit before the magistrate.
Id. at 792-93. We agree with the reasoning of the Smith court and find it persuasive as to the matter before us.
Following Article I, Section 12, of the Florida Constitution, we find that, in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the U.S. Supreme Court, it was error for the trial court to suppress the evidence. Thus, we find that the trial court erred in finding the lack of signature on the affidavit to be a fatal error and suppressing the evidence as a result.
Reversed and remanded.
LAGOA, J., concurs.
*1186 COPE, J. (dissenting).
I respectfully dissent. The police officer in this case failed to sign the affidavit in support of the search warrant. Florida follows a rule of strict construction of the statutory and constitutional provisions governing the issuance of search warrants, so the failure to sign is fatal to the warrant.
The majority opinion errs in saying that the warrant can be upheld under the Comformity Clause of Article I, Section 12 of the Florida Constitution. Absent a United States Supreme Court case squarely on point  and there is none  Florida law governs.

I.
This is a State appeal of an order suppressing evidence because the officer failed to sign the affidavit in support of the search warrant. A Miami-Dade County police detective drafted an affidavit in support of a search warrant to search a single family home and two additional structures which were on the same property. The affidavit set forth the reasons why the detective believed that marijuana was being grown at that location.
The detective took the affidavit to a circuit judge. The first paragraph of the affidavit states that the detective was duly sworn. The detective and the judge initialed each of the six pages of the affidavit.
On the final page there was a signature line for the affiant. The detective failed to sign it. Below the signature blank was a jurat stating "Sworn to and subscribed before me this the 16th day of May, 2007." The judge signed the jurat.
The search warrant was executed and contraband was found. Defendant-appellant Alfredo Moreno-Gonzalez was charged with being in actual or constructive possession of more than twenty-five pounds, but less than two thousand pounds, of cannabis.
The defendant filed a motion to suppress the evidence. A successor judge conducted an evidentiary hearing. The detective testified that the judge administered an oath and that she swore to the affidavit. The detective acknowledged that she did not sign on the signature line.
The trial court suppressed the evidence, reasoning that the affidavit was defective because it was not signed, and that suppression was required. The State has appealed.

II.
"When searches and seizures are made pursuant to the command of a search warrant, both the search warrant and the prerequisite oath or affirmation required for it must conform strictly to the constitutional and statutory provisions authorizing their issue." Jackson v. State, 87 Fla. 262, 99 So. 548, 549 (1924) (emphasis added); see also State v. Laiser, 322 So.2d 490, 492 (Fla.1975) (referring to the "strict interpretation which we have imposed for pre-seizure protections."); Collins v. State, 465 So.2d 1266, 1268 (Fla. 2d DCA 1985) ("affidavits and warrants must meticulously conform to statutory and constitutional provisions."); cf. State v. Vargas, 667 So.2d 175, 176-77 (Fla.1995) (suppressing evidence where warrant was served by an officer not named in the warrant, in violation of section 933.08, Florida Statutes).[2]
The strict construction rule is subject to the qualification that suppression is not required for a purely technical error. Cain v. State, 287 So.2d 69, 70 (Fla.1973). *1187 In Cain the judge failed to fill in the date that he signed the warrant. The Court concluded that suppression was not required because the error "was a mere technicality and not prejudicial." Id.
The question, then, is whether the failure to sign the affidavit is a mere technical error, or is a substantive issue. The Florida constitutional provision states that a search warrant cannot be issued except upon probable cause, "supported by affidavit[.]" Art. I, § 12, Fla. Const. (1968). By statute, the affidavit must be signed. § 933.06, Fla. Stat. (2007) ("The judge must, before issuing the warrant, have the application of some person for said warrant duly sworn to and subscribed[.]") (emphasis added); see also id. § 933.18 (specifying grounds for search of dwelling; requiring "sworn proof by affidavit ... that ... one of said conditions exists[.]").
In State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982), the court considered a case indistinguishable from the present one. There, as here, the officer had been placed under oath and swore to the truth of the statements in the affidavit, but failed to sign the affidavit. Over one dissent, the court concluded that under the rule of strict compliance, the signature requirement must be enforced. Id. at 1087-88.
It is true that the result in this case would be different under decisions of the federal courts of appeals and in a number of other states. According to Professor LaFave, "a written affidavit is not per se defective because it contains no signature or because it is shown that the signature was affixed subsequent to the search; in such instances it is still open to the prosecution to show by testimony that the affiant had taken an oath." 2 Wayne R. LaFave, Search and Seizure: a Treatise on the Fourth Amendment § 4.3(e), at 521-22 (4th ed. 2004). "[T]he failure to sign the warrant affidavit does not invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate." Smith v. State, 207 S.W.3d 787, 792 (Tex.Crim.App.2006).
There is, however, an exception. Professor LaFave states, "In some jurisdictions, the applicable statutes or court rules may be more strict." Id. § 4.3(e), at 522 n. 64. Florida is such a jurisdiction.
Florida law requires that the application for the search warrant be signed. § 933.06, Fla. Stat. (2007) ("sworn to and subscribed"). Florida follows a rule of strict construction. Jackson, 99 So. at 549 (oath or affirmation "must conform strictly to the constitutional and statutory provisions authorizing their issue."). See also Smith, 207 S.W.3d at 791 n. 20 ("A few states have held that a signature is required; in these cases, though, either a statutory provision or the state constitution required the signature.").
Given (a) the text of the Florida Constitution and statutory provisions, and (b) the rule of strict construction, suppression is required.

III.
The majority opinion reasons that reversal is required by the Conformity Clause contained in Article I, section 12 of the Florida Constitution. Respectfully, that is not correct. The majority opinion is inconsistent with Florida Supreme Court precedent interpreting the Conformity Clause.
Florida's protection against illegal searches and seizures is found in Article I, section 12 of the Florida Constitution. As stated in the majority opinion, this was amended in 1982 to specify that Article I, section 12 will be construed "in conformity with the 4th Amendment of the United States Constitution, "as interpreted by the United States Supreme Court." Articles *1188 seized in violation of this right shall not be admissible in evidence "if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution." (Emphasis added).[3]
The Florida Supreme Court has held that for the Conformity Clause to be applicable, there must be a United States "Supreme Court pronouncement factually and legally on point...." State v. Daniel, 665 So.2d 1040, 1047 n. 10 (Fla.1995), receded from on other grounds, Holland v. State, 696 So.2d 757, 760 (Fla.1997). The Court has explained:
[I]n the absence of a controlling U.S. Supreme Court decision, Florida courts are still "free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the Federal Constitution."
With the conformity clause amendment, we are bound to follow the interpretations of the United States Supreme Court with respect to the Fourth Amendment and provide to Florida citizens no greater protection than those interpretations. Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988). However, when the United States Supreme Court has not previously addressed a particular search and seizure issue which comes before us for review, we will look to our own precedent for guidance.
Soca v. State, 673 So.2d 24, 26-27 (Fla. 1996) (citations omitted) (emphasis added).[4]
The question, then, is whether there is a United States Supreme Court pronouncement which is "factually and legally on point with the present case[.]" Daniel, 665 So.2d at 1047 n. 10. The answer to that question is no.
The majority opinion relies on the United States Supreme Court opinion in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), but that case involved a different issue. The question there was how to interpret the text of an affidavit in support of a search warrant in order to determine whether probable cause for a search exists. In Ventresca, a federal court of appeals had held an affidavit "insufficient on the ground that `[t]he affidavit failed to clearly indicate which of the facts alleged thereon were hearsay or which were within the affiant's own knowledge,' and therefore `(t)he Commissioner could only conclude that the entire affidavit was based on hearsay.'" Id. at 109, 85 S.Ct. 741. Rejecting these technical objections, *1189 the United States Supreme Court held that affidavits for search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." Id. at 108, 85 S.Ct. 741. The Ventresca decision did not involve the factual situation now before us, namely, where an officer submitted an affidavit in support of a search warrant and failed to sign it.
The majority opinion relies in passing on three other United States Supreme Court decisions. Majority opinion at 6. None is factually or legally on point. In Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the Court concluded that the text of the complaint filed by the sheriff was facially insufficient to establish probable cause for an arrest or search. In McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927), the Court held that a congressional committee's unsworn report was a sufficient basis for the issuance of a warrant to compel the attendance of an absent witness. In Ex parte Burford, 7 U.S. 448, 2 L.Ed. 495 (1806), the defendant had been illegally committed to jail where a warrant had been issued without any sworn evidence. None of these cases addresses the factual and legal issue now before us.
The First District has considered the Conformity Clause in a case similar to the one which is now before us. In Mylock v. State, 750 So.2d 144 (Fla. 1st DCA 2000), a judge issued a search warrant on the basis of oral statements by deputy sheriffs. No affidavit was submitted. The State argued that under the Conformity Clause and the United States Supreme Court decisions Whiteley, McGrain, and Burford, it was unnecessary to file an affidavit. The First District said that while there are federal court of appeals decisions holding that the Fourth Amendment does not require a written affidavit, there was no United States Supreme Court decision on the point. "The United States Supreme Court... has never squarely reached the issue." Mylock, 750 So.2d at 147.
The Mylock court concluded that "in the absence of a United States Supreme Court decision controlling the issue before us, the validity of the warrant is controlled by Florida constitutional and statutory provisions requiring that a search warrant must be supported by an affidavit." Id. Because the warrant was issued without an affidavit, the warrant was invalid. Id.
The Mylock analysis is applicable here. There is no United States "Supreme Court pronouncement factually and legally on point with the present case...." Daniel, 665 So.2d at 1047 n. 10. Florida's Conformity Clause is therefore not applicable.
It follows that the Florida Constitution, statutes, and cases are controlling. Under the case law requiring strict construction, we are obligated to affirm the suppression order. If we wish to suggest a change in Florida law, then the appropriate procedure would be to affirm the trial court's ruling but certify a question.[5]
NOTES
[1] We note that section 22 of the Declaration of Rights of the Florida Constitution of 1885, as amended, like the Fourth Amendment to the United States Constitution, formerly provided that the warrant for search and seizure be supported by "oath or affirmation." When the Florida Constitution was revised in 1968, the present language of Article I, section 12 was modified to state that a warrant for search and seizure is to be "supported by affidavit."
[2] In Laiser, the Court explained that strict interpretation would be applied pre-seizure, whereas for post-seizure conduct, "we conclude that substantial compliance is sufficient where no prejudice is shown." Laiser, 322 So.2d at 492.
[3] Article I, section 12 states in full (with the 1982 amendment indicated in boldface in the text):

SECTION 12. Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
Art. I, § 12, Fla. Const. (amended 1982) (emphasis added).
[4] The Soca decision has been superseded on other grounds. Bamberg v. State, 953 So.2d 649, 654 (Fla. 2d DCA 2007).
[5] The State argues that we should reverse under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), but that argument was not raised in the trial court and may not be considered here.