NO. 07-10-00096-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



FEBRUARY
17, 2011

 



 

DAVID HUGHES, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 1
OF LUBBOCK COUNTY;

 

NO. 2008-451,814; HONORABLE LARRY B. "RUSTY" LADD, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

Appellant, David Hughes, was
convicted of the offense of driving while intoxicated (DWI)[1]
and sentenced to 180 days in jail; the jail time was suspended and appellant
was placed on community supervision for 18 months.  Appellant raises seven issues in his
appeal.  We will affirm.

 

 

Factual and
Procedural Background

On July 6, 2008, Lubbock Police
Officer James Woody was working the “STEP”[2]
program in downtown Lubbock.  At
approximately 1:30 a.m., Woody was working in the “Depot District”[3]
when he first observed appellant.  Woody
was at the intersection of 19th 
and Texas Avenue facing north.  Woody
observed appellant driving south toward 19th  on Buddy Holly Avenue.  Woody saw appellant make a wide right turn by
not turning as close to the right hand curb as practicable.  Woody described appellant’s turn as going
into the farthest south of the west bound lanes on 19th as opposed
to the north most west bound lane, the one closest to the curb.  As appellant passed by Woody’s location,
Woody observed appellant failing to drive in a single marked lane.  Woody proceeded to turn his emergency lights
on and stop appellant for the two traffic offenses he observed.[4]
After stopping appellant, Woody approached appellant’s vehicle and identified
himself while advising appellant of the reason for the stop. 

Upon walking up to the driver’s side
of appellant’s car, Woody could smell the odor of an alcoholic beverage coming
from the interior of the car.  Woody had
appellant step from the car and asked him to perform the standard field
sobriety tests.  After completing the
tests, Woody placed appellant under arrest for DWI and asked if appellant would
provide a specimen of his breath for analysis. 
Appellant refused to provide a breath specimen.  Woody then took appellant to University Medical
Center’s Emergency Room, and detained appellant in a lock up at that location,
while he prepared an application for a blood search warrant.  After Woody filled out the affidavit for a
search warrant and swore to it before a notary public, the affidavit was faxed
to a Lubbock County Judge, acting as a magistrate.  Subsequently, a search warrant signed by the
judge and an order for assistance directed to the hospital was faxed back to
Woody.  A nurse then drew the blood
sample from appellant and gave it to Woody. 
That same night, Woody delivered the blood sample to the Texas Department
of Public Safety regional laboratory in Lubbock.  Appellant was booked into the Lubbock County
Jail and charged with DWI.

Prior to trial, appellant’s trial
counsel filed a motion to suppress the blood test, a motion to suppress the
initial stop and arrest, and a motion to suppress the results of the horizontal
gaze nystagmus (HGN) test.  The trial
court heard evidence and argument on these motions on October 28, 2009.  The trial court overruled the motions to
suppress the initial stop, arrest, and the results of the HGN test on that
day.  Further, the trial court requested
briefing from all parties on the motion to suppress the blood test
results.  Subsequently, the trial court
overruled the motion to suppress the results of the blood test on December 15,
2009.  

Appellant proceeded to trial and the
jury found him guilty of the offense of DWI. 
Appellant was sentenced to 180 days in the Lubbock County Jail with a
jury recommendation that the jail time be suspended.  The trial court placed appellant on community
supervision for a period of 18 months. 
This appeal followed.

Appellant brings forth seven
issues.  Appellant contends that the
trial court erred:  1) by denying the
motion to suppress the initial stop because there was no reasonable suspicion that
an offense was being or about to be committed, 2) by denying the motion to
suppress the blood test because there was no probable cause to justify the
issuance of the warrant, 3) by allowing the oaths in support of the search
warrant to be administered telephonically, 4) by finding the search was not
unreasonable where no exigent circumstances existed, 5) by admitting the blood
test results because of the unsanitary conditions where the blood draw was
made, 6) because the State’s closing argument constituted egregious error, 7)
because inclusion of appellant’s requested Texas Code of Criminal Procedure
article 38.23 jury issue did not negate the error in denying the motion to
suppress.  We will consider these issues
in the order presented.

Initial Stop

Appellant’s first issue contends that
the trial court erred in overruling the motion to suppress the evidence
acquired after the initial stop because the officer who made the stop did not
have sufficient articulable facts that rose to the level of reasonable
suspicion to support stopping appellant.   


Standard of Review

            We
apply a bifurcated standard of review to the trial court’s ruling on a motion
to suppress.  See Valtierra v.
State, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010).  We must give almost total deference to the
trial court’s determination of historical facts.  See id.  The trial judge is the sole trier of fact and
the judge of the credibility of any witnesses’ testimony and the weight to be
assigned to that testimony.  See id.  When we review an application-of-law-to-fact
question not turning on the credibility and demeanor of the witnesses, we
review the trial court’s rulings de novo.  See Wiede v. State, 214
S.W.3d.17, 25 (Tex.Crim.App. 2007).  When
the record is silent as to the reasons for the trial judge’s ruling, or when
there are no explicit fact findings and neither party timely requested findings
and conclusions, we imply the necessary findings that would support the trial
court’s ruling if evidence, when viewed in the light most favorable to the
trial court’s ruling, supports those findings. 
See State v. Garcia-Cantu, 253 S.W.3d 236, 241
(Tex.Crim.App. 2008). 

Law

            Initially,
we note that the evidence reflects that the initial stop in question was made
without a warrant, which satisfies the initial burden of a defendant to rebut
the presumption of proper police conduct when challenging a search or
seizure.  See Torres v. State,
182 S.W.3d 899, 902 (Tex.Crim.App. 2005). 
The burden then shifts to the State to demonstrate that the government acted
reasonably.  See id.   Torres dealt with an application of
the Fourth Amendment to the United States Constitution while in the case before
the Court, appellant, along with a Fourth Amendment challenge, also alleges a
violation of Article I, Section 9 of the Texas Constitution.[5]  Appellant has not argued that article I,
section 9 affords him greater protection that is distinct from that of the
Fourth Amendment, and, therefore, we treat them as providing the same
protection and will consider them jointly. 
See Franks v. State, 241 S.W.3d 135, 141 (Tex.App.— Austin
2007, pet. ref’d).   Hulit v. State,
982 S.W.2d 431, 436 (Tex.Crim.App. 1998), concluded that, if an appellant makes
a state constitutional argument, then the proper inquiry is “the reasonableness
of the search or seizure under the totality of the circumstances.”  

Analysis

            At
the suppression hearing, Woody testified that he first observed appellant
headed toward 19th Street. 
Appellant stopped at the intersection of 19th Street and
Buddy Holly Avenue and turned right onto 19th Street.  Woody said that while making the right turn,
appellant turned into the south most lane of 19th Street, as opposed
to the north most lane, which would have been as close as practicable to the
curb.  See Tex. Transp. Code Ann. § 545.101(a) (West 1999).[6]  Woody also testified that from his vantage
point it was obvious that appellant intended to turn into the far left lane
after completing the right turn.  This
would have been the south most lane of 19th Street.  According to Woody, this meant appellant did
not turn as close as practicable to the curb, and, therefore, violated the
statute.  Appellant then drove past
Woody’s location and Woody pulled into the lane behind appellant’s
vehicle.  While driving behind appellant,
Woody testified that he observed appellant fail to drive in a single marked
lane.  At this time, Woody decided to
stop appellant for the two traffic offenses he had observed.  It is from this testimony that appellant
bases his claim that the trial court erred in overruling his motion to
suppress.

Appellant complains that the trial
court lacked specific, articulable facts that rose to the level of reasonable
suspicion to support the initial stop. 
To support this proposition, appellant analyzes the two traffic offenses
that the officer testified to seeing appellant commit, individually.  That is to say, appellant’s analysis is not
based on the totality of the circumstances, but rather takes a piece-meal
approach.  See Neal v. State,
256 S.W.3d 264, 280 (Tex.Crim.App. 2008). 
Further, the analysis put forth by appellant keys in on what offenses
the officer subjectively thought appellant had committed and not what the
evidence objectively reveals.  See
Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001) (officer’s
subjective motives and justification for the stop is irrelevant to the validity
of the stop).  Finally, appellant’s analysis
does not follow the chronology of events; rather, he analyzes the second
offense first.  This is apparently done
because appellant considers this the weaker of the reasons stated to stop
appellant.

We view this issue as turning upon
the credibility of the officer’s testimony about whether or not appellant made
a wide right turn.  Woody testified that
appellant made that wide turn while appellant testified he did not.  However, appellant’s analysis would have this
Court second guess the trial court about a matter that turned on the
credibility of the witness.  This we
cannot do, as we are cautioned to give almost total deference to the trial
court’s determination of historical facts that turn on the credibility of the
witness.  Valtierra, 310 S.W.3d at
447.  After hearing this testimony, the
trial court overruled appellant’s motion to suppress.  The trial court did not file any written
findings of fact, therefore, we imply the necessary findings that would support
the trial court’s ruling if evidence, when viewed in the light most favorable
to the trial court’s ruling, supports those findings.  See Garcia-Cantu, 253 S.W.3d at
241.  Since we find there is evidence to
support the trial court’s implied finding of a violation of a traffic law, a
wide right turn, there are specific articulable facts upon which to base a
temporary detention of appellant.  See
State v. Patterson, 291 S.W.3d 121, 123 (Tex.App.—Amarillo 2009, no
pet.) (holding that a traffic violation can constitute reasonable basis for
detention).  Accordingly, appellant’s
first issue is overruled.

Issuance of
Search Warrant

Appellant’s second issue contends
that the trial court committed reversible error when it refused to suppress the
evidence of the blood analysis based upon the issuance of a search
warrant.  This is so, according to
appellant, for a number of reasons which we will answer in turn.  Appellant first contends that the affidavit
in support of the issuance of the warrant did not contain specific enough
information to rise to the level of probable cause.  Next, appellant contends that the affiant did
not personally appear before the magistrate who issued the warrant and that
such failure to appear before the magistrate was a violation of appellant’s
rights under the constitutions of the United States and the State of Texas.

Standard of Review

            When
a trial court is reviewing the magistrate’s determination of probable cause to
support the issuance of a search warrant, there are no credibility
determinations, rather the trial court is constrained to the four corners of
the affidavit.  Hankins v. State,
132 S.W.3d 380, 388 (Tex.Crim.App. 2004). 
Accordingly, when we review the magistrate’s decision to issue a
warrant, we apply a highly deferential standard.  See Rodriguez v. State, 232
S.W.3d 55, 61 (Tex.Crim.App. 2007).  We
apply this deferential standard because we have a constitutional preference for
searches to be conducted pursuant to a warrant as opposed to warrantless
searches.  Id. (citing Illinois
v. Gates, 462 U.S. 213, 234-37, 103 S.Ct. 2317, 76 L.Ed.2d 527
(1983)).  As long as the magistrate had a
substantial basis for concluding that probable cause existed, we will uphold
the magistrate’s probable cause determination. 
Gates, 462 U.S. at 236.  We
are also reminded that reviewing courts should not invalidate a search warrant
by interpreting the affidavit in a hyper-technical manner, rather than in a
common sense manner.  Id.; Rodriguez,
232 S.W.3d at 59.

Probable Cause

            Probable
cause exists when the totality of the facts and circumstances presented to the
magistrate support the conclusion that there is a fair probability or
substantial chance that contraband or evidence of a crime will be found at the
specified location.  Flores v. State,
319 S.W.3d 697, 702 (Tex.Crim.App. 2010). 
Our duty is not to act as a rubber stamp for the magistrate or the trial
court, however, the decision of the magistrate should carry the day in a
doubtful or marginal case, even when the reviewing court might reach a
different conclusion in a de novo review.  Id.

            Our
review of the affidavit shows that Officer Woody was, on the day in question, a
commissioned peace officer employed by the Lubbock Police Department.  Woody requested the issuance of a search
warrant to search for evidence in human blood. 
Further, on July 6, 2008, at approximately 1:37 a.m., Woody initiated a
traffic stop of appellant.  The affidavit
lists the traffic offenses for which appellant was stopped.  Woody then states that, while talking to
appellant, he smelled an odor of an alcoholic beverage and observed that
appellant’s speech was slurred, his eyes were bloodshot and heavy, his balance
when standing was swayed, and his walking appeared to have a staggering gait to
it.  The affidavit then relates that
appellant advised Woody, “I can’t get a D.W.I.”   The affidavit goes on to state that
appellant was requested to take certain field sobriety tests and appellant
agreed to do so.  The results of the
tests are stated in the affidavit.  As to
each test given, the affidavit begins “I/ ___ observed” and then the
results.  This is read to indicate that
the officer filing out the affidavit gave the tests personally and observed the
various matters described for each test. 
The affidavit then states that, as a result of observing appellant
during the traffic stop and while performing the field sobriety tests, the
officer formed the opinion that appellant was intoxicated.  The officer also informs the magistrate that
he requested a specimen of appellant’s breath, but appellant refused to give
the specimen.  Finally, the officer
requests that the magistrate issue a search warrant and swears to the affidavit
before a notary public.

            With
the information contained in the affidavit, we must now answer the question of
whether or not there is probable cause, giving deference to the original
decision of the magistrate, to support the magistrate’s decision to issue the
warrant in question.  In our opinion,
there is sufficient probable cause.  When
this affidavit is viewed in a non-technical, common sense manner, there is more
than a fair probability or substantial chance that evidence of a crime will be
found within the blood of appellant.  Id.  The affidavit describes the results of the
standard field sobriety tests, and based upon those results, a commissioned
peace officer can form the opinion that appellant was intoxicated.  There is nothing within the four corners of
the affidavit that points to anything other than probable cause to support the
magistrate’s determination.  Hankins,
132 S.W.3d at 388.

            Appellant
contends that the affidavit is insufficient for a number of different
reasons.  Initially, he contends that the
affidavit does not state specific articulable facts to authorize a stop of
appellant.  Such an analysis misplaces
the analysis of a motion to suppress based upon a lack of reasonable suspicion
with the analysis of probable cause to issue a search warrant.  The issue of reasonable suspicion was
properly submitted to the trial court in the form of a motion to suppress and
has been decided adversely to appellant. 
Nowhere in article 18.01(b), the search warrant article, can appellant
find support for his contention regarding reasonable suspicion to stop
him.  Rather, appellant simply asserts
that the affidavit in question should have specifically set forth the evidence
supporting the initial stop because article 18.01(b) uses the phrase “unless
sufficient facts are presented.”  See
Tex. Code Crim. Proc. Ann. art.
18.01(b) (West Supp. 2010).[7]
The requirements of an “evidentiary,” article 18.02(10), search warrant are
covered in article 18.01(c).  See
arts. 18.01(c), 18.02(10).  Art. 18.01(c)
simply provides that the sworn affidavit required by art. 18.01(b) must set
forth sufficient facts to establish probable cause that “a specific offense has
been committed.”[8]  Art. 18.01(c).  The affidavit in question clearly sets forth
the offense of DWI and, by doing so, meets the requirements of art.
18.01(c).  Id.  The failure to detail the operative facts of
the initial stop is not fatal to the magistrate’s overall determination that
probable cause to issue the warrant existed because the issue is not reasonable
suspicion to detain appellant, rather it is probable cause to authorize the
issuance of a search warrant following the detention.  

            Appellant
continues his attack on the warrant by contending that paragraph 3 of the
affidavit is insufficient because it said the item to be possessed and
concealed was blood that constituted evidence and that belonged to appellant,
but did not state how that particular blood draw would constitute evidence of
DWI.  The essence of this and the
remaining arguments of appellant is to request us to hyper-technically construe
the language of the affidavit.  See  Rodriguez, 232 S.W.3d at 59.  Such an analysis denies this Court, as the
reviewing court, the right to interpret the affidavit in a commonsensical and
realistic manner, recognizing that the magistrate may draw reasonable
inferences.   Id. at 61.  The affidavit states that the suspected
offense is DWI and that a specimen of appellant’s breath had been requested and
refused. The affidavit then states that appellant is the person arrested, and
that blood is the property being concealed. 
Further, the affidavit states that the property constitutes
evidence.  It takes no great leap of
faith or unknown intuitiveness to realize that the magistrate knows that the
blood is being requested to analyze it for the presence of blood alcohol for
use in a prosecution for DWI.  This is a
reasonable inference the magistrate can draw from this affidavit.  Id.

            Appellant
then contends that the affidavit is insufficient because, in paragraphs 6, 7,
and 8, there are blanks which generally have something in front of a blank
followed by the specific observation or field sobriety tests.  Appellant’s complaint is that, “There are two
circled hash marks written at the beginning of each blank.  No description of what this symbol means or
what it represents appears in the affidavit.” 
Further, appellant complains that there is no explanation as to how any
of the observations and field sobriety tests listed in the paragraphs
constitute signs of intoxication.  

            Again,
the essence of appellant’s argument is to granulate and to analyze the
affidavit in a hyper-technical manner so as to reduce the overall impact of the
affidavit on the issue of probable cause. 
We, on the other hand, are told to use the totality of the circumstances
in reviewing the determination of probable cause.  See Flores, 319 S.W.3d at
702.  

Our review of the first complaint reveals,
regarding those strange slash marks, that they are nothing more than the letter
“I” followed by a slash mark, indicating that the officer who prepared the
affidavit made the following observations personally and did not get the
information from another officer.  The
complaint about the relationship between the observations and field sobriety
tests and intoxication go to the weight of such evidence and possibly the
credibility of a witness so testifying, but not to the issue before the
magistrate, which was probable cause. 
From this affidavit, there is more than sufficient evidence presented to
the magistrate to demonstrate a fair probability or substantial chance that
contraband or evidence of a crime will be found at the location the warrant is
directed to, the appellant’s blood.  Id.

 

 

Personal Appearance  

            Appellant
further contends that the affidavit is insufficient because the affiant did not
personally appear before the magistrate. 
Appellant contends that, since the printed form of the warrant contained
the language that the affiant “did heretofore this day subscribe and swore to
said affidavit before me” which the evidence demonstrates that the affiant,
Woody, actually swore to the affidavit before Officer Opaitz and not the
magistrate, the affidavit constitutes perjury and should not be used to issue a
warrant.  

            Appellant’s
contention is simply wrong and the law he provides to support this position is
neither accurate nor controlling.  First,
appellant asserts that art. 18.01(b) requires an affidavit in support of a
search warrant to be sworn to.  Art.
18.01(b).  This is accurate. However, the
record supports the fact that the affidavit was sworn to as required.  Nonetheless, appellant, without citation or
authority, asserts that Texas law requires the affiant to personally appear
before the individual administering the oath. 
The implication being left is that since Woody did not appear before the
magistrate, the oath is invalid. 
However, Woody did appear before a notary and swore to the affidavit;
therefore, the affidavit in support of the warrant was sworn to in the manner
required by the statute.  Id.  So, we are left with the question what, if
any, are the consequences of the language in the warrant stating that the
affiant appeared and swore to the affidavit before the magistrate personally?  

            Initially,
we observe that art. 18.01(b) simply requires that a sworn affidavit be filed
in every instance where a warrant is requested. 
Id.  Next, we note that,
when the Texas Court of Criminal Appeals was faced with the issue of a search
warrant affidavit that had been sworn to but not signed, the Court held that
the lack of a signature of the affiant did not vitiate the legal effect of the
warrant based upon that affidavit.  Smith
v. State, 207 S.W.3d 787, 793 (Tex.Crim.App. 2006).  From this we conclude that the extra wording
contained in the warrant issued based upon Woody’s affidavit did not impact the
legality of the warrant.  

            Having
concluded that there was probable cause to issue the warrant and that the
additional language contained in the warrant did not impact the warrant’s
validity, we overrule appellant’s second issue. 


Administration of the Oath

            Appellant’s
third issue is that the trial court committed egregious error because a warrant
was issued based upon the sworn oath in support of the affidavit being
submitted by telephone or facsimile. 
Appellant’s contention is not supported in the record.  The oath was given by Officer Opaitz, acting
in his capacity as a notary public, to Woody. 
The additional language contained in the warrant appears to be a part of
a standard form that is not applicable to this particular fact pattern.  Thus, we are faced with a request to
invalidate a warrant based upon an alleged error that does not impact the
probable cause finding made by the magistrate. 
Time and again we are counseled to look at the totality of the
circumstances, and not base our review on a technical application of the
law.  See Schornick v. State,
No. 02-10-00183-CR, 2010 Tex.App. LEXIS 9007, at *5-*7 (Tex.App.—Fort Worth
Nov. 4, 2010, no pet. h.) (memo. op., not designated for publication) (holding
that purely technical discrepancies do not automatically vitiate the validity
of a search warrant) (citing Green v. State, 799 S.W.2d 756, 759
(Tex.Crim.App. 1990)). Further, the case cited by appellant, Smith, 207
S.W.3d 787, does not stand for the proposition put forth by appellant.  Smith determined that an affidavit
filed without the signature of the affiant, which had in fact been sworn to,
would support the search warrant subsequently issued.  Id. at 793.  Judge Cochran’s opinion does, in fact,
contain the statements referred to by appellant; however, these statements are
not necessary to the holding of the Court and are, therefore, dicta;
furthermore, the opinion does not support appellant’s basic proposition.  Id. at 792-93.  We, therefore, overrule appellant’s third
issue.

Exigent Circumstances

            Appellant’s
fourth issue contends that there were no exigent circumstances that warranted
the intrusion of a blood draw, and that the police did not use the least
intrusive means to obtain the evidence required.  As a result, appellant contends that the
ruling of the trial court that the search was not unreasonable was egregious
error.

            First,
the cases submitted by appellant to support this contention are not cases in
which search warrants had issued. 
Rather, they were uniformly warrantless searches.  See Schmerber v. California,
384 U.S. 757, 758-59, 88 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Preston v.
United States, 376 U.S. 364, 368, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).  There is a decided preference in the law for
a search warrant.  See  Rodriguez, 232 S.W.3d at 61 (citing Gates,
462 U.S. at 236).  Also, exigent
circumstances are one of the exceptions to the warrant requirement of the
constitutions of Texas and the United States. 
See Gutierrez v. State, 221 S.W.3d 680, 685 (Tex.Crim.App.
2007).  Therefore, it is clear that there
is no requirement for exigent circumstances to authorize a blood draw based
upon a warrant issued after finding probable cause.  Therefore, appellant’s fourth issue is
overruled.

Unsanitary Blood Draw Conditions

            Appellant’s
fifth issue contends that the trial court erred in admitting the blood evidence
because of the unsanitary conditions where the blood draw occurred.  Appellant does not cite the Court to a
portion of the record where an objection was made to the blood draw because of
the lack of sanitary conditions.  We have
reviewed the record and do not find such an objection.  Further, we have reviewed the motion to
suppress the blood evidence and it does not object to the blood test evidence
based upon the lack of sanitary conditions of the blood draw.  

            Appellant’s
complaint has not been preserved for appeal. 
See Tex. R. App. P.
33.1(a), Fuller v. State, 253 S.W.3d 220, 232 (Tex.Crim.App. 2008).  Accordingly, appellant’s issue on appeal has
been waived.  Id.  Therefore, we overrule appellant’s fifth
issue.

Closing Argument of the State’s
Attorney

            Appellant’s
sixth issue contends that the State committed egregious error when, during
final arguments, the State made an improper jury argument.  The gist of appellant’s position is that the
State’s attorney struck at appellant through his characterization of
appellant’s trial attorney.  Although
appellant cites the Court to the portion of the record where the alleged
transgression occurred, he does not cite the Court to any portion of the record
where trial counsel objected to the alleged improper jury argument.  

            Because
appellant failed to object to the argument, nothing has been preserved for
appeal.   See Tex. R. App. P. 33.1(a), Fuller,
253 S.W.3d at 232.  As in the previous
issue, appellant’s issue on appeal has been waived.  Id. 
Appellant’s sixth issue is, therefore, overruled.

Article 38.23 Instruction

            In
appellant’s final issue, he contends that the inclusion of the art. 38.23
instruction in the jury charge did not negate the error of the trial court in
refusing to grant the pretrial motion to suppress the initial stop and
detention.  This issue appears to be
nothing more than an attempt to recast the very first issue regarding the
reasonable suspicion to stop appellant initially.  We have already ruled against appellant on
this issue.  Additionally, the record
reveals that appellant never lodged any objection to the art. 38.23 instruction
given to the jury.  Therefore, to the
extent appellant’s issue is an attempt to complain about the trial court giving
the instruction, the same has been waived because appellant did not preserve
the issue.  See Tex. R. App. P. 33.1(a), Fuller,
253 S.W.3d at 232.  Accordingly,
appellant’s final issue is overruled.

 

 

 

Conclusion

            Having
overruled each of appellant’s issues, the judgment of the trial court is
affirmed.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Publish.

 











[1] See Tex.
Penal Code Ann. § 49.04 (West 2003).





[2] “STEP” stands for Specific Traffic Enforcement
Program and is a grant funded program to enforce specific traffic laws.

 





[3] The “Depot District” was described as an
entertainment district in downtown Lubbock containing a number of restaurants
and bars.

 





[4] The activation of Woody’s emergency lights also
activated his in-car video recording device.





[5] Even though appellant’s issue contains a reference to
the “State Constitution,” we do not find any citations to cases expressly
dealing with alleged violations of Article I, Section 9 of the Texas
Constitution. 





[6] Tex. Transp. Code. § 545.101(a) provides that “to
make a right turn at an intersection, an operator shall make both the approach
and the turn as closely as practicable to the right-hand curb or edge of the
roadway.”





[7] Further reference to the Texas Code of Criminal
Procedure Annotated shall be by reference to “article ___” or “art. ___.”

 





[8] The article further enumerates other requirements not
germane to this argument.